1  HULETT HARPER STEWART LLP
2  BLAKE MUIR HARPER, SBN: 115756
   SARAH P. WEBER, SBN: 239979
3  LINDSAY J. FOSTER, SBN: 254008
4  525 B Street, Suite 760
   San Diego, CA  92101
5  Telephone:    (619) 338-1133
6  Facsimile:    (619) 338-1139
   e-mail:       bmh@hulettharper.com
7                sweber@hulettharper.com
8                lindsay@hulettharper.com

9  Interim Lead Counsel for Plaintiffs
10 [Additional Counsel Listed on Signature Page]

11        **IN THE UNITED STATES DISTRICT COURT**

12  **CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

13  | IN RE DIRECTV EARLY | CASE NO. 8:09-ml-2093AG(ANx) |
14  | CANCELLATION FEE | |
    | MARKETING AND SALES | **SECOND AMENDED CONSOLIDATED** |
15  | PRACTICES LITIGATION | **CLASS ACTION COMPLAINT** |
16  | This Document Relates To: | |
17  | | **DEMAND FOR JURY TRIAL** |
    | All Actions. | |
18  | | JUDGE:    Hon. Andrew J. Guilford |
    | | CTRM:    10D |
19
20
21
22
23
24
25
26
27
28

1        Plaintiffs Annette Kahaly, Joseph Lombardi, John Mulea, Kathleen O'Brien,

2   Roberta and Edward Pifer, Maureen Van Meter, Carolyn Forbes and Louis M.

3   Wilson, Paul Cannon, Tara and Sean Murray, Christine Schuessler, Hoyt McBroom,

4   Patricia Wilson, Patrick Keller, Rudolph Johnson, Dorothy Jones, Valerie

5   Thibodaux, Joshua Folkerth, Christine Slakans, Gary Smith, Sandra Johannes, Ira

6   Boshnack, Renato Cappuccitti,[1] David Ward, Keith and Jana Harper, Tracy

7   Twyman, and Paul and Karen Brice ("Plaintiffs"), on behalf of themselves and all

8   others similarly situated, allege the following against Defendant DirecTV, Inc.,

9   ("DirecTV" or "Defendant"), based on personal knowledge, information and belief,

10  and their counsels' investigation and research:

11                                      **INTRODUCTION**

12       1.     This action arises out of Defendant's deceptive and unlawful business

13  acts and practices concerning the sale of satellite television service plans and lease

14  of related equipment.  These practices include failing to disclose or inadequately

15  disclosing that by subscribing to DirecTV service (new customers), or modifying

16  their DirecTV service (existing customers), customers are automatically enrolled

17  into new programming commitment periods of 18 or 24 months that are subject to

18  an early cancellation fee of up to, and perhaps exceeding, $480.

19       2.     Even if DirecTV adequately disclosed all of its purported terms of

20  service, the early cancellation fee is an invalid liquidated damages clause and as

21  such is void and unenforceable.

22       3.     Plaintiffs, on behalf of themselves and the proposed Nationwide Class

23  (or, in the alternative, Multi-State Class) as initially defined herein, bring this action

24  for violation of State Consumer Protection Statutes, common law claims of money

25

---

26  [1]  On August 7, 2009, the transferor court in *Cappuccitti, et al. v. DirecTV, Inc.*, in

27  the Northern District of Georgia entered an Order staying the proceedings in the case pending the Defendant's interlocutory appeal of that court's denial of the

28  Defendant's motion to compel arbitration of Mr. Cappuccitti.

1  had and received, unjust enrichment, relief of unlawful penalties, violations of the

2  Electronic Funds Transfer Act, violations of the Federal Communications Act, and

3  for Declaratory Relief under 22 U.S.C. §§ 2201, *et seq.*    Plaintiffs seek

4  compensatory and punitive damages, restitution, and injunctive and declaratory

5  relief as set forth herein.

6                              **JURISDICTION AND VENUE**

7         4.    This Court has personal jurisdiction over the parties in this case.[2]

8  Defendant is a California corporation with headquarters in California within this

9  District.

10        5.    This Court has subject matter jurisdiction over this action pursuant to

11 the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one

12 Class member is of diverse citizenship from Defendant; there are more than 100

13 Class members nationwide; and the aggregate amount in controversy exceeds

14 $5,000,000.

15        6.    Venue is proper in this District under 28 U.S.C. § 1391(a) because

16 some Plaintiffs are residents and citizens of this District; Defendant maintains its

17 headquarters within this District; a substantial part of the events or omissions giving

18 rise to the claims occurred within this District; and Defendant has caused harm to

19 Class members residing within this District.

20                           **APPLICATION OF CALIFORNIA LAW**

21        7.    Plaintiffs Annette Kahaly, Joseph Lombardi, John Mulea, Kathleen

22 O'Brien, Roberta and Edward Pifer, Maureen Van Meter, Carolyn Forbes and Louis

23 M. Wilson, Paul Cannon, Tara and Sean Murray, Christine Schuessler, Hoyt

24 McBroom, Patricia Wilson, Patrick Keller, Rudolph Johnson, Dorothy Jones,

---

[2]  Plaintiffs Hoyt McBroom, Patricia Wilson, Patrick Keller, Rudolph Johnson, Dorothy Jones, Valerie Thibodaux, Joshua Folkerth, Christine Slakans, Gary Smith, Sandra Johannes, Ira Boshnack, Renato Cappuccitti, David Ward, Keith and Jana Harper, Tracy Twyman, and Paul and Karen Brice reserve their right to trial in their home jurisdiction after resolution of the MDL proceeding if appropriate.

2

1  Valerie Thibodaux, Joshua Folkerth, Christine Slakans, Gary Smith, Sandra
2  Johannes, Ira Boshnack, Renato Cappuccitti, David Ward, Keith and Jana Harper,
3  and Tracy Twyman ("Plaintiffs"), on behalf of themselves and all others similarly
4  situated, seek to apply California law to the greatest extent possible to the claims
5  and issues raised herein.

6       8.    All of Defendant's relevant business, including the formulation and
7  execution of the unlawful practices alleged herein, occurred in, or emanated from
8  California, where Defendant has its principal place of business.  Accordingly,
9  California has significant contacts and/or a significant aggregation of contacts to the
10 claims asserted by Plaintiffs and all Class members.

11      9.    California has a materially greater interest than any other State in
12 regulating unlawful conduct by DirecTV, which conducted its unlawful practices out
13 of its principal place of business in California, and in enforcing the rights and
14 remedies granted to United States consumers, including California residents, under
15 the California laws invoked by this Complaint.  These rights and remedies further
16 strong fundamental public policies of the State of California.

17                                       **PARTIES**
18 **Defendant**

19      10.    Defendant DirecTV provides satellite-based television service in the
20 United States and provides receivers and other equipment needed to access that
21 service.  DirecTV is incorporated in California and maintains its headquarters in El
22 Segundo, California.

23 **Individual and Representative Plaintiffs**
24     California Residents
25      11.    Plaintiff Annette Kahaly is a citizen of California and has resided in
26 Orange County, California at all relevant times.  In March 2008, Plaintiff subscribed
27 to DirecTV's satellite service.  DirecTV failed to disclose and/or inadequately
28 disclosed that its provision of service was subject to a commitment period or early

3

1 | cancellation fee. Plaintiff did not sign any document presented as an agreement to a
2 | commitment period and early cancellation fee. Following numerous attempts,
3 | DirecTV was unable to provide the correct programming Plaintiff requested and on
4 | or about April 9, 2008, Plaintiff cancelled her DirecTV service. Shortly thereafter
5 | DirecTV charged an early cancellation fee of $460 to her credit card. Plaintiff has
6 | suffered injury in fact and has lost money or property as a result of the unlawful
7 | conduct alleged herein.

8 | 12.   Plaintiff John Mulea is a citizen of California and has resided in San
9 | Jose, California at all relevant times. In or around 2003, Plaintiff Mulea subscribed
10 | to DirecTV's satellite service. DirecTV failed to disclose and/or inadequately
11 | disclosed that its provision of service was subject to a commitment period and an
12 | early cancellation fee. Plaintiff did not sign any document purporting to be an
13 | agreement with DirecTV. In February 2008, Plaintiff called DirecTV and requested
14 | a replacement receiver for one that had malfunctioned. DirecTV failed to disclose
15 | and/or inadequately disclosed to Plaintiff that as a result of the request for a
16 | replacement receiver, Plaintiff's service was subject to a new commitment period
17 | and early cancellation fee. Nor did Plaintiff receive and/or sign any document
18 | purporting to be an agreement with DirecTV. In November 2008, after
19 | approximately five years as a DirecTV customer, Plaintiff cancelled his service.
20 | Shortly thereafter, DirecTV assessed an early cancellation fee of $200 to Plaintiff's
21 | account, which he has paid. Plaintiff Mulea has suffered an injury in fact and has
22 | lost money or property as a result of the unlawful conduct alleged herein.

23 | 13.   Plaintiff Maureen Van Meter is a California citizen, and resided in
24 | Desert Hot Springs, California at all relevant times. In or around October 2001,
25 | Plaintiff subscribed to DirecTV's satellite service. DirecTV failed to disclose and/or
26 | inadequately disclosed that its provision of service was subject to a commitment
27 | period and an early cancellation fee. Plaintiff's original receiver box failed to
28 | function after seven years of service. Plaintiff then requested a standard

4

1   replacement box and a second standard box for another television.  DirecTV failed
2   to disclose and/or inadequately disclosed to Plaintiff that as a result of the requests
3   for a replacement box and a second receiver box, Plaintiff's service was subject to a
4   new commitment period and early cancellation fee.   Plaintiff did not sign any
5   document presented as an agreement to a new commitment period and early
6   cancellation fee.  In or around July 2008, Plaintiff cancelled her DirecTV service.
7   Shortly thereafter, DirecTV charged an early cancellation fee of $276.46 to
8   Plaintiff's debit card.  Plaintiff Van Meter has suffered injury in fact and has lost
9   money or property as a result of the unlawful conduct alleged herein.

10          Arizona Resident

11          14.     Plaintiff Christine Slakans is a citizen of Arizona and has resided in
12   Maricopa County at all relevant times.  In or around August 1998, Plaintiff subscribed
13   to DirecTV's satellite service.   Plaintiff was never informed of a programming
14   commitment or early cancellation fee.   In or around August 2008, after being a
15   DirecTV customer for ten years, DirecTV mailed Plaintiff an offer for a "Free DVR
16   Upgrade" for being a "loyal DirecTV customer."   The offer stated: "There are no
17   charges or strings attached.  It's just our way of saying thanks" and did not mention any
18   programming commitment terms, ECFs, leases, non-return fees, or any other term.  In
19   or around September 2008, Plaintiff called DirecTV customer service and accepted
20   DirecTV's offer for a "Free DVR Upgrade" and also purchased an additional DirecTV
21   receiver for $99.00.   DirecTV failed to disclose the existence of a programming
22   commitment or early cancellation fee.   In February 2009, Plaintiff cancelled her
23   DirecTV services.  Defendant thereafter assessed and continued to attempt to collect
24   from Plaintiff a $380 Early Cancellation Fee.  Had Plaintiff known of the Programming
25   Commitment term and associated Early Cancellation Fee, she would not have ordered,
26   installed or activated the DVR receivers.  Plaintiff has suffered injury in fact and has
27   lost money as a result of the unlawful conduct alleged herein.

28

8:09-ml-2093AG(ANx)

<u>Florida Residents</u>

15.    Plaintiff Joseph Lombardi is a citizen of Florida and has resided there at all relevant times. In December 2007, Plaintiff Lombardi subscribed to DirecTV's satellite service. DirecTV failed to disclose and/or inadequately disclosed that its provision of service was subject to a commitment period and an early cancellation fee. Plaintiff did not sign any document purporting to be an agreement with DirecTV. On or about September 2008, Plaintiff cancelled his DirecTV service. Shortly thereafter DirecTV charged an early cancellation fee of $160.00 to Plaintiff's credit card. Plaintiff Lombardi has suffered injury in fact and has lost money or property as a result of the unlawful conduct alleged herein.

16.    Plaintiff Kathleen O'Brien is a citizen of Florida and has resided there at all relevant times. In or around 2004, Plaintiff subscribed to DirecTV's satellite service. DirecTV failed to disclose and/or inadequately disclosed that its provision of service was subject to a commitment period and an early cancellation fee. Plaintiff did not sign any document purporting to be an agreement with DirecTV. In December 2007, Plaintiff's husband requested a programming upgrade to include high definition ("HD") channels. DirecTV failed to disclose and/or inadequately disclosed to Plaintiff and her husband that as a result of the request for HD channels, Plaintiff's service was subject to a new commitment period and early cancellation fee. Nor did Plaintiff receive and/or sign any document purporting to be an agreement with DirecTV. Approximately one week later, Plaintiff called DirecTV to cancel her service. Shortly thereafter, DirecTV charged Plaintiff an early cancellation fee of $440.00 to her debit card. Plaintiff O'Brien has suffered injury in fact and has lost money or property as a result of the unlawful conduct alleged herein.

17.    Plaintiff Sandra Johannes is a citizen of Florida and has resided in Miramar, Florida at all relevant times. In July 2008, Plaintiff subscribed to DirecTV's satellite service. DirecTV failed to disclose and/or inadequately disclosed that its provision of service was subject to a commitment period or early

6

1  cancellation fee.  When Plaintiff received her first bill from DirecTV it reflected a

2  monthly fee that exceeded the monthly charge she agreed to when she subscribed to

3  the service and as a result cancelled her service. Shortly thereafter DirecTV charged

4  an early cancellation fee of approximately $320 to Plaintiff's debit card.  Plaintiff

5  has suffered injury in fact and has lost money or property as a result of the unlawful

6  conduct alleged herein.

7       18.    Plaintiff Ira Boshnack is a citizen of Florida and has resided in

8  Coconut Creek, Florida at all relevant times.  In July 2007, Plaintiff subscribed to

9  DirecTV's satellite service.    DirecTV failed to disclose and/or inadequately

10 disclosed that its provision of service was subject to a commitment period or early

11 cancellation fee.  When Plaintiff received his first bill from DirecTV it reflected a

12 monthly fee that exceeded the monthly charge he agreed to when he subscribed to

13 the service and as a result Plaintiff contacted DirecTV to cancel his service.  On this

14 call, Plaintiff was informed for the first time that he was subject to a programming

15 commitment and would be charged $450 if he canceled the service.  To avoid the

16 $450 penalty Plaintiff did not cancel his service.  As a result, Plaintiff pays a higher

17 monthly service charge than he agreed to pay at the time he subscribed, does not

18 receive the service that was originally described to him by DirecTV and will incur

19 substantial additional damages if he cancels the service.  Further, in March 2008,

20 Plaintiff purchased a new additional television set and arranged for DirecTV service

21 to be provided to the new additional television.  DirecTV failed to disclose to

22 Plaintiff that this change to the service would result in the imposition of an

23 additional programming commitment.  Plaintiff was informed by DirecTV after the

24 fact, that he is obligated to continue DirecTV's services until March 2010 or pay the

25 ECF.   As a result of Defendant's unilateral imposition and extension of his

26 programming commitment, Plaintiff has been forced to either (a) continue his

27 programming service with DirecTV or (b) discontinue service and pay the ECF.

28 Plaintiff has chosen to continue the service and has suffered injury in fact and has

1  lost money as a result of the unlawful conduct alleged herein.

2      Georgia Residents

3      19.    Plaintiff Renato Cappuccitti is a citizen of Georgia and has resided in

4  Alpharetta, Georgia at all relevant times.   In or around June 2004, Plaintiff

5  subscribed to DirecTV's satellite service. DirecTV failed to disclose and/or

6  inadequately disclosed that its provision of service was subject to a commitment

7  period or early cancellation fee.  Plaintiff did not sign any document presented as an

8  agreement to a commitment period and early cancellation fee.  On or about March,

9  2008, Plaintiff cancelled his DirecTV service.  Shortly thereafter DirecTV charged

10 an early cancellation fee of $420.00 to his credit card.  Plaintiff disputed the charge

11 through his credit card company and the charge was reversed, but DirecTV referred

12 the early cancellation fee to a third party collection agency.  Directly as a result of

13 Plaintiff filing the instant suit against DirecTV, DirecTV has at least temporarily

14 ceased its collection activities.  Plaintiff has suffered an ascertainable loss as a result

15 of the unlawful conduct alleged herein.

16     20.    Plaintiff David Ward is a citizen of Georgia and has resided in Warner

17 Robins, Georgia at all relevant times.   In or around August 30, 2008, Plaintiff

18 subscribed to DirecTV's satellite service. DirecTV failed to disclose and/or

19 inadequately disclosed that its provision of service was subject to a commitment

20 period or early cancellation fee.  Plaintiff did not sign any document presented as an

21 agreement to a commitment period and early cancellation fee.  On or about April 24,

22 2009 DirecTV changed the terms of its service and sent Plaintiff notice of the

23 change by stuffing the new agreement with the May billing statement.  On or about

24 May 5, 2009 Plaintiff contacted DirecTV to indicate he would not accept the new

25 terms contained in the updated agreement dated April 24, 2009.  On or about

26 May 13, 2009, DirecTV discontinued Plaintiff's service and charged him a $300

27 early cancellation penalty.  Because Plaintiff paid ahead on his account and had a

28 credit before he received the new agreement, the credit went toward the early

8

1   cancellation fee, leaving a balance of $45, which DirecTV is attempting to collect.
2   Plaintiff has suffered injury in fact and has lost money or property as a result of the
3   unlawful conduct alleged herein.

4        <u>Illinois Resident</u>

5        21.    Plaintiff Christine Schuessler is a citizen of Illinois and has resided in
6   St. Clair County, Illinois at all relevant times.  Plaintiff subscribed to DirecTV's
7   satellite service.  DirecTV failed to disclose and/or inadequately disclosed that its
8   provision of service was subject to a commitment period or early cancellation fee.
9   Plaintiff did not sign any document presented as an agreement to a commitment
10  period and early cancellation fee.  On or about January 9, 2009, Plaintiff cancelled
11  her DirecTV service.  Shortly thereafter, DirecTV charged an early cancellation fee
12  of $280.00 to her credit card.  Plaintiff contested the charge to her credit card and
13  thereafter the amount was refunded.  Subsequently, Direct TV referred the early
14  cancellation fee to a collection agency that pursued collection against Plaintiff and
15  she has now paid the fee.  Plaintiff has suffered injury in fact and has lost money or
16  property as a result of the unlawful conduct alleged herein.

17       <u>Louisiana Residents</u>

18       22.    Plaintiff, Valerie Thibodeaux, was a resident of Louisiana and resided
19  in Thibodaux, Louisiana in Lafourche Parish at all relevant times.  In or about
20  February 2006, Plaintiff subscribed to DirecTV's satellite service via telephone
21  solicitation.  DirecTV failed to disclose and/or inadequately disclosed that its
22  provision of service was subject to a commitment period or early cancellation fee.
23  Plaintiff did not sign any document presented as an agreement to a commitment
24  period and early cancellation fee.  Plaintiff granted DirecTV access to her banking
25  account by direct draft.  Shortly thereafter, in or about March 2006, Plaintiff
26  cancelled her DirecTV service, but despite her right to terminate the agreement,
27  DirecTV charged an early cancellation fee of $80 to her banking account.  Plaintiff
28  has suffered injury in fact and has lost money or property as a result of the unlawful

9

1  conduct alleged herein.

2      23.    Plaintiff, Rudolph Johnson, was a resident of Louisiana and resided in
3  Bastrop, Louisiana in Morehouse Parish at all relevant times.  In or about September
4  2005, Plaintiff subscribed to DirecTV's satellite service.  DirecTV failed to disclose
5  and/or inadequately disclosed that its provision of service was subject to a
6  commitment period or early cancellation fee.  Plaintiff did not sign any document
7  presented as an agreement to a commitment period and early cancellation fee.  In or
8  about December 2007, Plaintiff cancelled his DirecTV service. Shortly thereafter,
9  DirecTV charged an early cancellation fee of $187.06.  Plaintiff has suffered injury in
10  fact and has lost money or property as a result of the unlawful conduct alleged herein.

11      24.    Plaintiff, Patrick Keller, was a resident of Louisiana and resided in
12  Vacherie, Louisiana in St. James Parish at all relevant times.  In or about December
13  2004, Plaintiff subscribed to DirecTV's satellite service.  DirecTV failed to disclose
14  and/or inadequately disclosed that its provision of service was subject to a
15  commitment period or early cancellation fee.  Plaintiff did not sign any document
16  presented as an agreement to a commitment period and early cancellation fee.  In or
17  about January 2007, Plaintiff cancelled his DirecTV service.  Shortly thereafter,
18  DirecTV charged an early cancellation fee of $176 to his credit card.  Plaintiff has
19  suffered injury in fact and has lost money or property as a result of the unlawful
20  conduct alleged herein.

21      25.    Plaintiff, Patricia Wilson, was a resident of Louisiana and resided in
22  Monroe, Louisiana in Ouachita Parish at all relevant times.  In or about March 2007,
23  Plaintiff subscribed to DirecTV's satellite service.  DirecTV failed to disclose and/or
24  inadequately disclosed that its provision of service was subject to a commitment
25  period or early cancellation fee.  Plaintiff did not sign any document presented as an
26  agreement to a commitment period and early cancellation fee.  In or about April 2008,
27  Plaintiff cancelled her DirecTV service.  Shortly thereafter, DirecTV charged an early
28  cancellation fee of $400 to her credit card.  Plaintiff has suffered injury in fact and has

10

1    lost money or property as a result of the unlawful conduct alleged herein.

2          26.    Plaintiff, Dorothy Jones, was a resident of Louisiana and resided in

3    Monroe, Louisiana in Ouachita Parish at all relevant times.  In or about March 2007,

4    Plaintiff subscribed to DirecTV's satellite service.  DirecTV failed to disclose and/or

5    inadequately disclosed that its provision of service was subject to a commitment

6    period or early cancellation fee.  Plaintiff did not sign any document presented as an

7    agreement to a commitment period and early cancellation fee.  In or about April 2009,

8    Plaintiff cancelled her DirecTV service.  Shortly thereafter, DirecTV charged an early

9    cancellation fee of $160 to his credit card.  Plaintiff has suffered injury in fact and has

10   lost money or property as a result of the unlawful conduct alleged herein.

11       New Jersey Residents

12         27.    Plaintiffs Sean and Tara Murray are married and are citizens of New

13   Jersey.  They have resided in Cherry Hill, New Jersey at all relevant times.  In

14   approximately 2002, Plaintiffs subscribed to DirecTV's satellite service.  In May or

15   June 2007 Plaintiffs Sean and Tara Murray purchased a DirecTV HD box.  DirecTV

16   failed to disclose and/or inadequately disclosed that as result of purchasing the HD

17   box, Plaintiffs' service was subject to a new commitment period and early

18   cancellation fee.  Plaintiffs did not receive or sign any document purporting to be an

19   agreement with DirecTV.  In June or July 2007, after five years as a DirecTV

20   customer, Ms. Murray cancelled their service.  Shortly thereafter DirecTV assessed an

21   early cancellation fee of $175.  Plaintiffs refused to pay.  Defendant referred the early

22   cancellation fee to a third party collection agency that pursued collection against

23   Plaintiffs and they have now paid the fee.  Plaintiffs have suffered injury in fact and

24   have lost money or property as a result of the unlawful conduct alleged herein.

25       New York Residents

26         28.    Plaintiff Paul Cannon is a citizen of New York and has resided in

27   Monroe County, New York at all relevant times.  In April 2009, Plaintiff subscribed

28   to DirecTV's satellite service.  DirecTV failed to disclose and/or inadequately

11

1  disclosed that its provision of service was subject to a commitment period or early

2  cancellation fee.  Plaintiff did not sign any document presented as an agreement to a

3  commitment period and early cancellation fee.  On or about May 1, 2009, Plaintiff

4  cancelled his DirecTV service.   Shortly thereafter, DirecTV charged an early

5  cancellation fee of $460.00 to his credit card.  Plaintiff has suffered injury in fact

6  and has lost money or property as a result of the unlawful conduct alleged herein.

7       29.    Plaintiff Joshua Folkerth was a resident of New York and resided in

8  Buffalo in Erie County, New York at all relevant times. In or about March 2008,

9  Plaintiff subscribed to DirecTV's satellite service. DirecTV failed to disclose and/or

10 inadequately disclosed that its provision of service was subject to a commitment

11 period or early cancellation fee.  Plaintiff did not sign any document presented as an

12 agreement to a commitment period and early cancellation fee.  During August 2008,

13 Plaintiff cancelled his DirecTV service. Shortly thereafter, DirecTV charged an

14 early cancellation fee of $360 to his credit card.  Plaintiff has suffered injury in fact

15 and has lost money or property as a result of the unlawful conduct alleged herein.

16      Oregon Residents

17      30.    Plaintiffs Carolyn Forbes and Louis M. Wilson are married and are

18 citizens of Oregon.  They have resided in Marion County, Oregon at all relevant

19 times. In February 2008, Plaintiffs subscribed to DirecTV's satellite service through

20 a bundled service package offered by their telephone service provider, Qwest.

21 DirecTV failed to disclose and/or inadequately disclosed that its provision of service

22 was subject to a commitment period or early cancellation fee.  Plaintiff did not sign

23 any document presented as an agreement to a commitment period and early

24 cancellation fee.  On or about May 2008, Plaintiffs cancelled their DirecTV service.

25 Shortly thereafter DirecTV charged Plaintiffs an early cancellation fee of $300.

26 Plaintiffs have suffered injury in fact and have lost money or property as a result of

27 the unlawful conduct alleged herein.

28

12

8:09-ml-2093AG(ANx)

Pennsylvania Resident

31.    Plaintiff Gary Smith is a citizen of Pennsylvania and has resided there at all relevant times.  In or around June 1998, Plaintiff subscribed to DirecTV's satellite service.  Plaintiff was never informed of a programming commitment or early cancellation fee.  In December 2007 and January 2008 Plaintiff purchased DirecTV HD receivers from DirecTV and from eBay.  Plaintiff paid approximately $150 for his DirecTV receiver and approximately $188.50 for the HD Receiver/DVR he purchased from eBay.  Plaintiff has had problems with his DirecTV reception.  He subsequently informed DirecTV that he wished to cancel his service, but was told that if he did, he faced an early cancellation fee and would be charged additional fees if he did not return both receivers he had purchased. Plaintiff has presently suspended his account with DirecTV and is not using their services, although he is still paying monthly charges.  But for the threat of a cancellation fee, which DirecTV personnel have stated would be $169, Plaintiff Smith would immediately cancel his service with DirecTV.  He has kept an account with DirecTV solely to avoid the undisclosed cancellation fees DirecTV has stated they will charge him.  Plaintiff Smith has suffered an ascertainable loss as a result of the unlawful conduct alleged herein.

South Carolina Resident

32.    Plaintiff Hoyt McBroom is a citizen of South Carolina and has lived in Dorchester County, South Carolina at all relevant times.  In the fall of 2007, after being contacted by phone and offered DirecTV service in conjunction with telephone service, Plaintiff subscribed to DirecTV's satellite service as part of a bundled service package offered by his telephone service provider, Bellsouth. DirecTV failed to disclose that its provision of service was subject to a commitment period or early cancellation fee.  Plaintiff did not sign any document presented as an agreement to a commitment period and early cancellation fee.  Approximately two months later, after being billed incorrectly for the services he ordered, Plaintiff

13

1   informed DirecTV that he wanted to cancel his service.  Plaintiff was then advised

2   by DirecTV for the first time that canceling his service would result in the

3   imposition of an early cancellation fee of $275.  Plaintiff canceled the service and

4   refused to pay the early cancellation fee.   Defendant referred Plaintiff's early

5   cancellation fee to three separate third party collection agencies.   Plaintiff has

6   suffered an ascertainable loss as a result of the unlawful conduct alleged herein.

7   　　　　Virginia Residents

8   　　　　33.   Plaintiffs Roberta and Edward Pifer are Virginia citizens and resided

9   there at all relevant times.  In or around 1999, Plaintiffs subscribed to DirecTV's

10  satellite service.  DirecTV failed to disclose and/or inadequately disclosed that its

11  provision of service was subject to a commitment period and an early cancellation

12  fee.  Plaintiffs did not sign any document purporting to be an agreement with

13  DirecTV.  In May 2008, Plaintiffs requested a replacement box for one that had

14  failed to function after approximately eight years of service.  DirecTV failed to

15  disclose and/or inadequately disclosed to Plaintiffs that as a result of the request for

16  a replacement box, Plaintiffs' service was subject to a new commitment period and

17  early cancellation fee.  Plaintiffs did not sign any document purporting to be an

18  agreement with DirecTV.  In or around August 2008, Plaintiffs cancelled their

19  DirecTV service.  Shortly thereafter, DirecTV charged an early cancellation fee of

20  $400.00 to Plaintiffs' credit card.  Plaintiffs Roberta and Edward Pifer have suffered

21  injury in fact and have lost money or property as a result of the unlawful conduct

22  alleged herein.

23  　　　　Washington Residents

24  　　　　34.   Plaintiffs Keith and Jana Harper are married and are citizens of

25  Washington.  They have resided in Seattle, Washington at all relevant times.  In

26  August 2008 Plaintiffs subscribed to DirecTV's satellite service. DirecTV failed to

27  disclose and/or inadequately disclosed that its provision of service was subject to a

28  commitment period or early cancellation fee.  Plaintiff did not sign any document

14

1   presented as an agreement to a commitment period and early cancellation fee. The
2   service provided by DirecTV was inadequate and the DVR system did not work
3   properly. As a result, Plaintiffs contacted DirecTV to cancel their service but were
4   informed for the first time that they were subject early cancellation fee of either
5   $410 or $360. The Plaintiffs objected to the imposition of the ECF and told
6   DirecTV to cancel the service. DirecTV charged Plaintiffs an early cancellation fee
7   of $360.00. Plaintiffs have suffered injury in fact and have lost money or property
8   as a result of the unlawful conduct alleged herein.

9       35.   Plaintiff Tracy Twyman is a citizen of Washington and at all relevant
10  times resided in Vancouver, Washington. In October 2008, Plaintiff subscribed to
11  DirecTV's satellite service.   DirecTV failed to disclose and/or inadequately
12  disclosed that its provision of service was subject to a commitment period or early
13  cancellation fee. Plaintiff did not sign any document presented as an agreement to a
14  commitment period and early cancellation fee. In January 2009 Plaintiff activated
15  two additional DirecTV receivers for two additional televisions in her home.
16  DirecTV failed to disclose that this change to its service would result in the
17  imposition of a programming commitment and early cancellation fee.   Shortly
18  thereafter Plaintiff noticed an increase in her bill and contacted to DirecTV to
19  inquire about the elevated charges.   She was informed that DirecTV had been
20  improperly billing her for service she had not agreed to. Plaintiff wishes to cancel
21  DirecTV's service but as a result of Defendant's unilateral imposition of her
22  programming commitment, Plaintiff has been forced to either (a) continue her
23  programming service with DirecTV or (b) discontinue service and pay the ECF.
24  Because she cannot afford to pay the ECF, Plaintiff has chosen to continue the
25  service and has suffered injury in fact and has lost money as a result of the unlawful
26  conduct alleged herein.

27      36.   Plaintiffs Paul and Karen Brice are married and are citizens of
28  Washington. They have resided in Yakima County, Washington at all relevant times.

15

1  In January 2009 Plaintiffs subscribed to DirecTV's satellite service. DirecTV failed
2  to disclose and/or inadequately disclosed that its provision of service was subject to a
3  commitment period or early cancellation fee. Plaintiffs did not sign any document
4  presented as an agreement to a commitment period and/or early cancellation fee. The
5  service provided by DirecTV was inadequate and the DVR system did not work as
6  promised. As a result, Plaintiffs cancelled their service and DirecTV imposed a
7  $411.44 ECF on Ms. Brice's credit card. Mr. Brice disputed the charge with her
8  credit card company and the charge was reversed. DirecTV referred the early
9  cancellation fee to a third party collection agency that pursued collection against
10 Plaintiffs and they have now paid the fee. Plaintiffs have suffered injury in fact and
11 have lost money or property as a result of the unlawful conduct alleged herein.

12                      **COMMON FACTUAL ALLEGATIONS**

13       37.    DirecTV is a satellite television service provider. DirecTV advertises
14 markets and sells satellite services to residential and commercial consumers
15 throughout the United States, including, but not limited to, installation, activation,
16 and delivery of DirecTV satellite television equipment, and audio and video
17 programming provided to consumers via broadcast satellite. DirecTV provides both
18 standard-definition ("SD") and high-definition ("HD") satellite television service.
19 In order to receive DirecTV's signal, consumers must purchase or lease certain
20 equipment, such as the appropriate satellite dish and receiver box. If a consumer
21 wants to record live television, he or she must also purchase or lease either an SD or
22 HD digital video recorder (DVRs).

23       38.    DirecTV is the nation's largest provider of "direct to home" digital
24 television services and transmits to over 17.6 million subscribers throughout the
25 United States, or approximately 18% of the market for multichannel video
26 programming.

27       39.    DirecTV uses standardized marketing and sales messages to promote
28 its services and advertises widely in print and broadcast media. DirecTV also uses

1    standardized materials to enroll customers into its subscriptions.

2    40.    DirecTV operates in an intensely competitive market.    DirecTV

3    competes with the Dish Network, another major direct-to-home television satellite

4    service provider, which has over 13 million subscribers.

5    41.    DirecTV also competes with cable television companies.  According to

6    the National Cable and Telecommunications Association's 2008 Industry Overview,

7    cable lines pass by 100% of U.S. television households.  Cable companies account

8    for approximately 66% of the market for multichannel video programming and

9    possess the competitive advantage of "bundling" related services such as cable

10   television, broadband Internet, and telephone service at a discount to the consumer.

11   42.    DirecTV also faces competition from emerging technologies, such as

12   telephone companies' use of fiber optic networks to provide video programming and

13   Internet-based video broadcasts.

14   43.    The seasonal and special offers and discounts offered by DirecTV and

15   its competitors contribute to the "churn" experienced by multichannel video

16   programming providers.  Churn refers to the turnover in customer base that occurs

17   when subscribers switch service providers.  DirecTV has one of the lowest levels of

18   customer churn in its industry.

19   **DirecTV Uses Programming Commitment and ECF to Reduce Churn**

20   44.    To reduce churn, DirecTV imposes the undisclosed or inadequately

21   disclosed early cancellation fee ("ECF").  The ECF can be as high as $480.  The

22   ECF, however, is not designed to compensate DirecTV for any actual damages

23   arising from the subscriber's cancellation of DirecTV's service.  Instead, the ECF is

24   a penalty designed to lock-in DirecTV's existing subscribers to its service and deter

25   them from switching to other service providers to obtain lower rates or better

26   satellite, cable, or internet television service.

27   45.    Even customers who have been with DirecTV for many years are

28   subject to the ECF.  Without any disclosure of any kind, DirecTV automatically

17

enrolls existing customers into new commitment periods of 18 or 24 months when they merely request a change in service such as a different programming package or a different, additional, or replacement receiver (the receivers have an expected lifespan of 4-5 years). Customers who cancel during these new, undisclosed commitment periods are assessed the ECF.

46. Indeed, DirecTV aggressively promotes its new HD, DVR, and HD/DVR receivers to existing customers as a means of additional revenue. In addition to adding new revenue by collecting monthly lease fees, DirecTV uses the set-top receivers to lure existing subscribers unknowingly into new commitment periods. Thus, long-time subscribers are locked into new commitments of 18 to 24 months when they need to replace old, malfunctioning equipment to continue receiving the service.

47. DirecTV, in fact, admits that "increasing the penetration levels of customers purchasing HD and DVR services" is part of its strategy for reducing churn and a cornerstone of its overall competitive strategy.

48. DirecTV's 2007 Annual Report touts "significant progress in reducing average monthly churn – the percentage of customers who disconnect their service each month – to an eight year low of 1.51%."

**DirecTV Fails to Disclose Programming Commitment and Early Cancellation Fee**

49. As a policy and practice, DirecTV either fails to disclose or fails to adequately disclose in a clear and conspicuous manner its imposition of programming commitment periods and ECFs.

50. While in some instances, Defendant makes reference to the existence of a cancellation fee associated with early termination of services; its reference is insufficient to adequately inform customers of the full circumstances of their commitment. The inadequacy of the disclosures is demonstrated by what is buried in the miniscule type of their advertising, rather than what is clearly stated. The

18

disclosures fail to adequately inform customers of the term to which they are committing themselves. Rather, they state that the customer will be charged a fee if he or she fails to "maintain your (the customer's) programming commitment."

51.     Though there is mention of a "system lease" requirement for 24 months, the consumer's purported obligation to continue monthly payments for programming for a full 24-month period is not made clear. The disclosures also fail to inform consumers that the promotional price they have agreed to pay will be going up significantly after an initial 12-month period and that they will be required to pay almost twice as much for the remaining 12-month period of their 24-month commitment. The disclosures further fail to specify that if customers cancel at the end of the initial 12-month period they will be charged a cancellation fee of hundreds of dollars, even though they are halfway through the full term of the contract. Further, they fail to disclose that if the customer downgrades his or her programming to a less expensive package, a cancellation fee will be assessed. The disclosures that are included are in miniscule type, approximately 5.5 type size, barely readable to the naked eye.

52.     When customers call DirecTV by telephone to order service in response to their advertising, DirecTV fails to disclose the material facts about commitment periods and cancellation fees. Defendant's sales representatives tout the features of various packages, assure the customer of the value of the services, and sign the customer up for installation. They obtain the customer's credit card or other payment method, and process the order through Defendant's internal computer system. Their sales script includes nothing about the terms of service and the significant penalties for failure to comply with them.

53.     Customers do not receive the terms and conditions that DirecTV purports to impose on them at the time of purchase, or when they change service. Customers, therefore, are unaware of programming commitments and possible fees for "early cancellation" until after they have purchased, installed and activated

19

1  DirecTV's service and equipment.  On information and belief, DirecTV maintains
2  records of its customers' purported commitment periods and is able to disclose the
3  duration of the commitment periods in its monthly billing statements to customers,
4  but instead fails to do so.

5      54.    Customers often learn of the purported commitment periods that are in
6  effect only when they inform DirecTV that they wish to downgrade, disconnect, or
7  cancel their service.  In some instances, at that time, DirecTV notifies customers that
8  they are subject to the purported commitment period set forth in its records and that
9  if they decide to cancel, DirecTV will enforce the commitment period by assessing
10 the ECF.  In other instances, the customer is not informed of the ECF until they
11 receive a final bill from DirecTV after cancellation of service.

12     55.    DirecTV imposes the ECF regardless of the reason for cancellation,
13 such as moving to a new address, the inability to establish service, or poor service.
14 DirecTV also imposes the ECF in instances where it is the party choosing to cancel
15 service because, for example, it deems a subscriber a bad credit risk or if a customer
16 rejects the imposition of a change in the terms of the Customer Agreement by
17 DirecTV.

18     56.    DirecTV fails to clearly and conspicuously disclose the material terms
19 relating to the ECF at the time the customer accepts or modifies their service, and
20 instead delays disclosure of the precise terms until the customer requests
21 cancellation or after.

22     57.    DirecTV solicits customers to provide a bank account or credit card at
23 the time of activation and will not activate services unless such information is
24 provided or a deposit is given as an alternative.  Without disclosing its intention to
25 do so, DirecTV will automatically withdraw the ECF from cancelling customers
26 account.  If the customer has not given DirecTV access to a credit or debit card to
27 automatically assess the ECF, DirecTV will institute collections efforts against the
28 customer.

58.     Through its scheme of automatically enrolling new and existing customers into undisclosed commitment periods subject to an undisclosed ECF, DirecTV successfully keeps its customers locked in.

59.     DirecTV's ECF permits it to collect significant revenues as a result of: (1) the payment of the ECF themselves; and (2) revenue generated by locking-in subscribers to its service for the duration of the commitment periods, when they would otherwise cancel or terminate the service.

**DirecTV's Customer Agreement and Equipment Lease Addendum**

60.     As noted, DirecTV does not present all of the material terms of its satellite service at the time a customer agrees to accept service, changes his or her service, or at the time the customer purchases a DirecTV receiver. Instead, DirecTV sends a "Customer Agreement" after the consumer receives the necessary equipment and begins receiving satellite service. The Customer Agreement is a standardized adhesion contract that purports to govern the terms of DirecTV's provision of service and is sent to customers with their first billing statement, approximately one month after service has been ordered, well after installation has occurred and well into the period during which Defendants charge an early cancellation fee. Thus, DirecTV purports to enforce an ECF even before consumers have been provided contract terms.

61.     DirecTV customers have no opportunity to negotiate the terms of the Customer Agreement. In fact, the Customer Agreement states that "If you notify us that you do not accept such terms and conditions [as included in the Customer Agreement], then we may cancel your Service as provided in Section 5, as we cannot offer Service to different customers on different terms, among other reasons." DirecTV Customer Agreement (April 24, 2007), attached hereto as Exhibit 1, ¶ 4. Rejection of the terms of the Customer Agreement results in the imposition of the early cancellation fee or other fees.

62.     The Customer Agreement contains numerous paragraphs of dense

21

1    material.  It does not present all of the material terms and the terms it does present
2    are not presented in a clear and conspicuous manner.  The Customer Agreement
3    does not provide for a specific "cancellation fee," but only states that "you may be
4    charged a deactivation fee [up to$15.00, and] . . .  If you cancel your Service or
5    change your Service package, you may be subject to an early cancellation fee if you
6    entered into a separate programming commitment with DirecTV in connection with
7    obtaining  Receiving  Equipment  and  have  failed  to  maintain  the  required
8    programming package for the required period of time."  Ex. 1, ¶ 5(b).  Further,
9    rather  than  highlight  these  terms  to  make  them  clear  and  conspicuous  to  the
10   customer, DirecTV buries them in the forty-sixth paragraph of the prolix Customer
11   Agreement.

12        63.     The "separate programming commitment" referenced in the Customer
13   Agreement  is  also  obscured  in  a  separate  document  titled  "Equipment  Lease
14   Addendum" ("ELA").  Oftentimes, the Installation/Service Satisfaction Checklist
15   and Equipment Lease Addendum is not presented to customers at all, for instance
16   when an existing customer requests changes in service or replaces malfunctioning
17   equipment.   Even  when  it  is  presented  to  the  customer,  the  Equipment  Lease
18   Addendum  is  not  presented  as  an  essential  document  governing  the  terms  of
19   DirecTV's provision of service.  Consumers do not receive the Equipment Lease
20   Addendum alongside the Customer Agreement.  The Equipment Lease Addendum is
21   printed on the reverse side of a document titled "Installation/Service Satisfaction
22   Checklist," which is presented to the customer, if at all, by DirecTV or its agents
23   only after they install the receiving equipment in the customer's home.  The manner
24   in which the ELA is presented is suggestive of providing customer feedback, rather
25   than as an important legal document.

26        64.     Whether  an  existing  customer  receives  the  Equipment  Lease
27   Addendum or not, its terms purport to apply after such persons request a change in
28   service such as a different service package, service at a new address, replacement

22

1  equipment for malfunctioning receiving equipment, or additional equipment, i.e., to
2  receive programming on a television in another room.

3      65.    The ELA provides in small print in the middle of the document a
4  "Programming Agreement" and "Programming Commitment."[3] It states:

> 5  PROGRAMMING AGREEMENT.  Within 30 days of provision of
> 6  DirecTV equipment to you, or on the date that the professional
> 7  installer has installed or is prepared to install your DirecTV equipment,
> 8  whichever is sooner, you agree to activate each and every DirecTV
> 9  Receiver ordered by you or provided to you with any DirecTV® base
> 10  programming package (valued at $29.99 per mo. or above) . . . DVR
> 11  service activation ($5.99/mo.) required for DVR leases; HD Access fee
> 12  ($9.99/mo.) required for HD Receiver leases; and, both DVR service
> 13  and HD Access fee payment required for HD DVR leases.  In certain
> 14  markets, programming and pricing may vary.   DirecTV
> 15  PROGRAMMING AND PRICING SUBJECT TO CHANGE AT
> 16  ANY TIME.

> 17  PROGRAMMING COMMITMENT.  The programming package(s)
> 18  must be maintained for a period of not less than (a) twelve (12)
> 19  consecutive months (for accounts with only standard receiver(s)), or
> 20  (b) twenty-four (24) consecutive months (for accounts with advanced
> 21  product(s)/receiver(s) digital video recorder (DVR), high definition
> 22  receiver (HD) or high definition digital video recorder (HD DVR),
> 23  including additional DirecTV receiver(s)).

24      66.    The ELA states (vaguely) the upper end of termination fees the
25  customer faces if he or she does not fulfill the "Programming Commitment":

> 26  CONSEQUENCES OF YOUR FAILURE TO ACTIVATE

27
28  [3]  References made herein are to the March 2006 Equipment Lease Addendum
(attached hereto as Exhibit 2) unless otherwise specified.

23

1    PROGRAMMING   OR   SATISFY   YOUR   PROGRAMMING
2    COMMITMENT.    If you fail to activate all of your DirecTV
3    equipment in accordance with this Equipment Lease Addendum, you
4    agree that DirecTV or an authorized DirecTV Retailer may charge you
5    a fee, as liquidated damages, of $150 for each receiver that is not
6    activated.    If you fail to maintain your minimum programming
7    commitment, you agree that DirecTV may charge you a prorated fee of
8    up to $150 for standard receivers and up to $300 for advanced
9    products/receivers (e.g., DVR, HD, HD DVR, etc.).

10    67.    While the ELA indicates the early cancellation fee is prorated, it does
11 not disclose to customers how any "pro-rated fee" is determined, or any formula that
12 a customer can use to calculate the cancellation fee she may face depending upon
13 when she cancels.    Further, despite DirecTV's representations about prorating,
14 DirecTV either charges or threatens to charge customers the full amount of the early
15 cancellation fees.

16    68.    The ELA does not disclose the justification for the early cancellation
17 fee or the non-activation fee – especially once DirecTV gets back the equipment to
18 re-lease to other subscribers – and how or why the fees vary.

19    69.    The ELA does not state why DirecTV charges $120 more for the early
20 termination of a programming commitment with HD equipment over standard
21 equipment.

22    70.    The ELA also does not explain why there is no difference in fees for
23 the failure to activate either the SD or HD equipment (both for $150), or why the
24 fact that once any programming package is instituted, DirecTV needs to increase the
25 early termination fee to $360 or $480, respectively.

26    71.    In or about 2008, DirecTV altered the ELA.    Rather than a
27 "programming commitment," customers now had a "programming term," and the
28 minimum term on standard equipment was lengthened from 12 months to 18

24

1  months.  DirecTV Equipment Lease Addendum (9/08), attached hereto at Exhibit 3.
2  The "consequences" were increased, and the ECF charges went from $150 to $300
3  to $360 and $480, respectively.

4       72.    On April 24, 2009, DirecTV revised its Customer Agreement, attached
5  hereto as Exhibit 4.  Now, for the first time, it makes reference to the ELA, stating in
6  all caps, "If you obtained receiving equipment during or after March 2006, the
7  Equipment Lease Addendum, available at DirecTV.com, governs your receipt, use,
8  and return of the equipment." Ex. 4 at 1.

9       73.    The new April 24, 2009 Customer Agreement also references the ELA
10  in Paragraph 5 "Cancellation."   The 2007 agreement stated that "if you cancel
11  Service or change your Service package, you may be subject to an early cancellation
12  fee if you entered into a separate programming commitment with DirecTV." Ex. 1,
13  ¶ 5(b).  The updated Customer Agreement states, "if you cancel Service or change
14  your Service package, you may be subject to an early cancellation fee if you entered
15  into a separate programming commitment with DirecTV in connection with the
16  Equipment Lease Addendum, and have failed to maintain the require programming
17  package for the required period of time." Ex. 4 at 1.

18       74.    Thus three years after initiating the leasing program, DirecTV finally
19  amended the basic customer agreement to inform purchasers that a separate
20  "Equipment Lease Addendum" exists and includes early cancellation fees.
21  However, the Customer Agreement still does not mention what the commitment
22  periods may be, or the amount of the possible cancellation fees, or the formula for
23  how the fees are calculated.

24       75.    Even after these changes, Defendant still provides material information
25  to consumers in different formats and at different times.  The various terms and
26  conditions of its contracts may be found 1) on the back of the work order checklist
27  provided by the third-party installer at time of installation; 2) on Defendants'
28  website; 3) by confirmation letters that are sent to consumers after signing up for

25

1   service but prior to installation; and 4) in the customer's first monthly bill.  At no

2   point prior to, during, or after purchase, is the customer given a single form that

3   contains all applicable terms and conditions.  A customer may never know when he

4   or she has received all relevant information.  For example, the Customer Agreement

5   provided with the first bill, several weeks after the initial order, provides that the

6   customer "may incur early cancellation fees and/or equipment non-return fees as

7   specified in any lease, programming, or other service agreement you entered into in

8   connection with obtaining Receiving Equipment."  The "agreements" the customer

9   supposedly "entered into," are not ones where there was any affirmative agreement.

10  Rather, they were buried several pages deep in Defendants' web site or

11  inconspicuously posted on the back of an installation checklist.  The customer was

12  not asked to review them before agreeing to the contract.

13       76.     Despite the fact that the customer is not informed of, and does not

14  accept all of the broad-reaching terms of Defendant's contract at any given point,

15  Defendant insists that the customer is bound by what it terms a "multi-layered"

16  approach to contracting.   Each of Defendant's "layers" of contracting contains

17  partial information about the full contract-none of them contains a full disclosure in

18  one place, and the confusing use of cross-referencing does nothing to clarify the

19  contract's terms.

20       77.     In some instances, the documents point to each other, yet they are

21  provided at different times and in different contexts.  For example, the Customer

22  Agreement, which purports to cover the "terms and conditions" of Defendant's

23  contract with customers, cross-references a "programming agreement" described in

24  a separate document found on the reverse side of an installation checklist, which was

25  provided to the customer one month earlier at installation.   That "programming

26  agreement" states it "contains the terms and conditions for the lease of equipment,

27  but must be read together with the DirecTV Customer Agreement," resulting in a

28  cross-reference to a document that arrives one month later with the customer's first

1   bill and after installation of the equipment.

2   78.   Customers are left to piece the material facts together on his or her
3   own.  And by the time the customer receives the final "layer" of the "multi-layered"
4   contract (i.e., the Customer Agreement) and may be able to piece together the
5   material terms of the contract, he or she will be assessed a significant fee for early
6   cancellation.  The terms of the contract cannot be rejected at that point without
7   incurring a penalty.  Accordingly, when customers seek to cancel their service, they
8   are unaware that they will be assessed a significant unexpected penalty for early
9   cancellation.

10  **DirecTV Settled a 22 State Attorney Generals' Investigation Regarding Its**
11  **Failure to Disclose the Material Terms of Customer Agreements**

12  79.   In December 2005, DirecTV settled an unfair business practices
13  investigation by 22 state attorneys general regarding "free" trials, service packages,
14  promotional equipment offers, and other similar issues.  DirecTV entered an
15  Assurance of Voluntary Compliance/Assurance of Discontinuance ("Voluntary
16  Assurance"), a copy of which is attached as Exhibit 5.

17  80.   The Voluntary Assurance directly addresses DirecTV's behavior with
18  regard to its hidden long-term contracts and early cancellation fees.  DirecTV is
19  obligated to "clearly and conspicuously" disclose, both orally and in writing, all
20  material terms of a transaction for equipment or services, whether made through
21  DirecTV or a retailer.

22  81.   The Voluntary Assurance also affords consumers the right to cancel
23  service without penalty or cost should DirecTV fail to clearly and conspicuously
24  apprise them of material terms of its service, or should the consumer discover he or
25  she is unable to receive adequate satellite reception.

26  82.   The Voluntary Assurance does not affect private actions in any way,
27  by its express terms.  Indeed, violation of the Voluntary Assurance is *prima facie*
28  evidence of a violation of a participating State's consumer protection statute.

27

## FRAUDULENT CONCEALMENT

83.     Plaintiffs are consumers who obtained satellite television service from DirecTV, and purchased or leased receivers from DirecTV for that purpose. Absent discovery, Plaintiffs are unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at DirecTV responsible for its practice of concealing the commitment period and the early cancellation fee from Plaintiffs and consumers. DirecTV necessarily is in possession of all of this information.

84.     Plaintiffs' claims arise out of DirecTV's fraudulent concealment of the ECF. To the extent that Plaintiffs' claims arise from DirecTV's fraudulent concealment, there is no one document or communication, and no one interaction, upon which Plaintiffs base their claims. Plaintiffs allege that at all relevant times, including specifically at the time they ordered DirecTV service and receivers, DirecTV knew that Plaintiffs and Class members would be subject to a long-term contract and early cancellation fee, and that DirecTV failed to disclose these material facts to the Plaintiffs and Class members prior to their ordering or activating DirecTV service or equipment.

85.     The terms concealed and/or not disclosed by DirecTV to Plaintiffs and the Class are material in that a reasonable person would have considered them important in deciding whether or not to subscribe to DirecTV service, or to purchase or lease a receiver.

86.     DirecTV knew that the commitment period and ECF were material terms of its service that consumers would want to know in advance of ordering or activating DirecTV service, or ordering, leasing or activating new receivers.

87.     DirecTV had a duty to disclose the commitment period and ECF to Plaintiffs and Class members prior to completing the transaction which allegedly triggered these contractual obligations.

88.     Plaintiffs make the following specific fraud allegations with as much

28

1    specificity as possible absent access to the information necessarily available only to

2    DirecTV:

3              a.    Who: DirecTV concealed the commitment period and ECF from

4    Plaintiffs and the Class members.  Plaintiffs are unaware of, and therefore unable to

5    identify, the true names and identities of those individuals at DirecTV responsible

6    for such decisions.

7              b.    What:    DirecTV    knew    and    fraudulently    concealed    or

8    intentionally failed to disclose the material facts that purchasing or leasing a receiver

9    would activate a long-term service contract with a provision for early cancellation

10    Penalties.

11              c.    When: DirecTV concealed this material information at all times,

12    starting no later than 1999, continuing through the time of Plaintiffs' purchase of the

13    service and/or receivers, and on an ongoing basis continuing to this day.  DirecTV

14    only discloses the ECF after the relevant transaction has been completed, or when

15    subscribers, such as Plaintiffs here, seek to cancel service.

16              d.    Where: DirecTV concealed this material information in its

17    communication with Plaintiffs (until after it assessed the ECF against them), and the

18    Class members.  Further, while this information appears on the Equipment Lease

19    Addendum, this document was not given to Plaintiffs at the time of initiating

20    service.  On information and belief, the Addendum is supplied to Class members, if

21    at all, only after DirecTV service and equipment has been purchased/leased,

22    installed, and activated, and is furnished under the pretense that it is a work order

23    sign-off, certifying only that the service had been installed to Class members'

24    satisfaction.  Similarly, the disclosures on DirecTV's website are intended to escape

25    the notice of Plaintiffs and the Class members, most of who order service and

26    equipment by telephone, and are not directed to the website for additional terms of

27    service at the time of their initiating transactions.

28              e.    How: DirecTV concealed this material information by not

1   disclosing it to Class members, or by disclosing the terms in a document offered
2   under false pretenses after the relevant transaction had been completed, as described
3   in the preceding paragraph.  DirecTV concealed these terms even though it knew
4   this information and knew that it would be important to a reasonable consumer in
5   deciding whether to order and activate DirecTV service and/or equipment.

6           f.     Why: DirecTV concealed this material information for the
7   purpose of inducing Plaintiffs and Class members to subscribe to DirecTV service
8   and/or lease a receiver.  Had DirecTV disclosed the truth, Plaintiffs (and reasonable
9   consumers) would not have subscribed to DirecTV and/or leased the receivers.

10      89.    Plaintiffs and Class members justifiably acted or relied upon to their
11  detriment  the  concealed  and/or  non-disclosed  facts  as  evidenced  by  their
12  subscription to DirecTV service, and/or their purchase or lease of receivers.  Had
13  they known of the hidden contract terms, Plaintiffs and Class members would not
14  have  subscribed  to  DirecTV  service,  and  would  not  have  purchased  or  leased
15  DirecTV's receivers.

16                                  **TOLLING**

17      90.    Discovery Rule: The causes of action alleged herein accrued upon
18  discovery of the fraudulently concealed contract terms and ECFs.  Because DirecTV
19  systematically conceals these material terms, Plaintiffs and Class members did not
20  discover and could not have discovered them until DirecTV asserted the rights
21  conferred upon it by these hidden terms, usually by charging the ECF against an
22  unsuspecting consumer.  Moreover, Plaintiffs and Class members had no reason to
23  conduct an investigation into these hidden terms, and a reasonable and diligent
24  investigation would not have revealed them.

25      91.    Fraudulent Concealment: Any applicable statutes of limitation have
26  been tolled by DirecTV's knowing and active concealment of these material terms,
27  and denial of the facts as alleged herein, which concealment is ongoing.  Plaintiffs
28  and Class members have been kept ignorant of vital information essential to the

                                     30

1    pursuit of these claims, without any fault or lack of diligence on their part.  Plaintiffs

2    and Class members could not reasonably have discovered the hidden, material terms

3    including the term commitment and attendant ECF.  In addition, DirecTV continues

4    to sell and lease its receivers without disclosing the hidden terms.

5          92.    <u>Estoppel</u>: DirecTV was and is under a continuous duty to disclose to

6    the Plaintiffs and Class members the hidden term commitment and the ECFs.

7    DirecTV knowingly, affirmatively, and/or actively concealed these terms, which

8    concealment is ongoing.  DirecTV continues to sell and lease its receivers without

9    disclosing the hidden terms.  Furthermore, Plaintiffs and Class members reasonably

10   relied upon DirecTV's knowing, affirmative, and/or active concealment.  Based on

11   the foregoing, DirecTV is estopped from relying on any statutes of limitation in its

12   defense of this action.

13   **CLASS ALLEGATIONS**

14         93.    This action has been brought, and may be properly maintained, under

15   Federal Rules of Civil Procedure 23(a)(1)-(4), 23(b)(3).

16         94.    Plaintiffs bring this action as a class action on behalf of themselves

17   and all others similarly situated as members of Classes (collectively referred to as

18   "Nationwide Class") initially defined as follows:

19           **United States**: All current and former DirecTV customers (1) whose

20           satellite service is subject to an early cancellation fee or any other fee

21           related to the cancellation of service, or (2) who DirecTV charged an

22           early cancellation fee or any other fee related to the cancellation of

23           service.

24         95.    In the alternative, Plaintiffs bring this action on behalf of themselves

25   and all others similarly situated as members of Classes (collectively referred to as

26   "Multi-State Class") initially defined as follows:

27           **California**: All current and former DirecTV customers in California

28           (1) whose satellite service is subject to an early cancellation fee or any

31

1  other fee related to the cancellation of service, or (2) who DirecTV
2  charged an early cancellation fee or any other fee related to the
3  cancellation of service.

4  **Arizona**: All current and former DirecTV customers in Arizona
5  (1) whose satellite service is subject to an early cancellation fee or any
6  other fee related to the cancellation of service, or (2) who DirecTV
7  charged an early cancellation fee or any other fee related to the
8  cancellation of service.

9  **Florida**: All current and former DirecTV customers in Florida
10  (1) whose satellite service is subject to an early cancellation fee or any
11  other fee related to the cancellation of service, or (2) who DirecTV
12  charged an early cancellation fee or any other fee related to the
13  cancellation of service.

14  **Georgia**: All current and former DirecTV customers in Georgia
15  (1) whose satellite service is subject to an early cancellation fee or any
16  other fee related to the cancellation of service, or (2) who DirecTV
17  charged an early cancellation fee or any other fee related to the
18  cancellation of service.

19  **Illinois**: All current and former DirecTV customers in Illinois
20  (1) whose satellite service is subject to an early cancellation fee or any
21  other fee related to the cancellation of service, or (2) who DirecTV
22  charged an early cancellation fee or any other fee related to the
23  cancellation of service.

24  **Louisiana**: All current and former DirecTV customers in Louisiana
25  (1) whose satellite service is subject to an early cancellation fee or any
26  other fee related to the cancellation of service, or (2) who DirecTV
27  charged an early cancellation fee or any other fee related to the
28  cancellation of service.

**New Jersey**: All current and former DirecTV customers in New Jersey (1) whose satellite service is subject to an early cancellation fee or any other fee related to the cancellation of service, or (2) who DirecTV charged an early cancellation fee or any other fee related to the cancellation of service.

**New York**: All current and former DirecTV customers in New York (1) whose satellite service is subject to an early cancellation fee or any other fee related to the cancellation of service, or (2) who DirecTV charged an early cancellation fee or any other fee related to the cancellation of service.

**Oregon**: All current and former DirecTV customers in Oregon (1) whose satellite service is subject to an early cancellation fee or any other fee related to the cancellation of service, or (2) who DirecTV charged an early cancellation fee or any other fee related to the cancellation of service.

**Pennsylvania**: All current and former DirecTV customers in Pennsylvania (1) whose satellite service is subject to an early cancellation fee or any other fee related to the cancellation of service, or (2) who DirecTV charged an early cancellation fee or any other fee related to the cancellation of service.

**South Carolina**: All current and former DirecTV customers in South Carolina (1) whose satellite service is subject to an early cancellation fee or any other fee related to the cancellation of service, or (2) who DirecTV charged an early cancellation fee or any other fee related to the cancellation of service.

**Virginia**: All current and former DirecTV customers in Virginia (1) whose satellite service is subject to an early cancellation fee or any other fee related to the cancellation of service, or (2) who DirecTV

33

charged an early cancellation fee or any other fee related to the cancellation of service.

**Washington**: All current and former DirecTV customers in Washington (1) whose satellite service is subject to an early cancellation fee or any other fee related to the cancellation of service, or (2) who DirecTV charged an early cancellation fee or any other fee related to the cancellation of service.

96.     Excluded from the proposed Nationwide Class or Multi-State Class are any entity in which Defendant has a controlling interest; any of Defendant's officers, directors, or employees; the legal representatives, heirs, successors, and assigns of Defendant; and any judge to whom this case is assigned and his or her immediate family.

97.     Numerosity: Fed. R. Civ. P. 23(a) (1): The members of the Nationwide Class or Multi-State Class are so numerous and widely dispersed that joinder of them in one action is impractical. Millions of individuals subscribe to DirecTV's service and Class members are likely to number in the tens of thousands. The precise numbers of Class members are unknown to Plaintiffs, but each Class member should be readily identifiable from information and records in DirecTV's possession and control.

98.     Existence and Predominance of Common Questions of Law and Fact: Fed. R. Civ. P. 23(a)(2); 23(b)(3): Common questions of law and fact exist as to all Class members and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

      a.     Whether DirecTV has a practice of imposing ECFs of up to $480 on subscribers who cancel DirecTV service;

      b.     Whether the Customer Agreement and Equipment Lease Addendum are valid and enforceable agreements;

34

1          c.     Whether the ECF DirecTV imposes is invalid;

2          d.     Whether DirecTV failed to disclose or adequately disclose
3    material information to subscribers, such as the commitment periods and ECFs;

4          e.     Whether DirecTV's conduct as alleged herein violated the State
5    Consumer Protection statutes alleged herein;

6          f.     Whether DirecTV's conduct as alleged herein constituted money
7    had and received;

8          g.     Whether as a result of the conduct alleged herein, DirecTV has
9    unjustly enriched itself;

10         h.     Whether    DirecTV's    conduct    violates    the    Federal
11   Communications Act;

12         i.     Whether DirecTV's conduct violates the Electronic Funds
13   Transfer Act; and

14         j.     Whether Plaintiffs and Class members are entitled to damages,
15   restitution, injunctive relief and declaratory relief.

16   99.    Typicality: Fed. R. Civ. P. 23(a)(3): Plaintiffs' claims are typical of the
17   claims of the Nationwide Class or Multi-State Class as Plaintiffs' service was
18   subject to an ECF and Plaintiffs were each charged the ECF.

19   100.   Adequacy of Representation: Fed. R. Civ. P. 23(a)(4): Plaintiffs are
20   adequate representatives of the Nationwide Class or Multi-State Class because their
21   interests do not conflict with the interests of Class members they seek to represent.
22   Plaintiffs have retained competent and experienced class action counsel who intend
23   to vigorously prosecute this action.  The Class members' interests will be fairly and
24   adequately protected by Plaintiffs and their counsel.

25   101.   Superiority: A class action is superior to other available methods for
26   the fair and efficient adjudication of this controversy since joinder of all the Class
27   members is impracticable.  Even if individual Plaintiffs and the other Class members
28   could afford individual litigation, the courts could not.  The amount at stake for each

                                    35

1   consumer is such that individual litigation or arbitration would be inefficient and
2   cost prohibitive.  Additionally, the adjudication of this controversy through a class
3   action will avoid the possibility inconsistent and potentially conflicting adjudication
4   of the claims asserted herein.  There will be no difficulty in the management of this
5   action as a class action.

6                            **CAUSES OF ACTION**
7                             **FEDERAL CLAIMS**
8                                 **COUNT I**
9          **(Declaratory Relief Under 28 U.S.C. Sections 2201, *et seq.*)**

10         102.   Plaintiffs repeat and reallege the allegations contained in each of the
11  paragraphs of this Complaint as if fully set forth herein.  This claim is brought by all
12  Plaintiffs on behalf of themselves and all Class members.

13         103.   An actual controversy has arisen and now exists between Plaintiffs, on
14  the one hand, and Defendant on the other, concerning their respective rights and
15  duties in that Plaintiffs contend, and DirecTV denies, that:

16         a.     the terms of the purported contracts between DirecTV and Class
17  members are invalid and unenforceable as the purported contracts were not agreed
18  upon at the time service was initiated and cannot be performed within one year and
19  were not evidenced by a signed writing;

20         b.     DirecTV is not entitled to enforce the terms of the Customer
21  Agreement and/or the Equipment Lease Addendum including, but not limited to, the
22  commitment period, the ECF, equipment charges and/or the binding arbitration
23  clause;

24         c.     DirecTV's attempts to impose its ECF on Plaintiffs and Class
25  members constitutes unlawful, unfair, and/or deceptive business practices; and

26         d.     the ECF is an invalid liquidated damages clause and void.

27
28
                                       36

## COUNT II

**(Violation of the Electronic Funds Transfer Act (EFTA),**
**15 U.S.C. Section 1693)**

104.   Plaintiffs repeat and reallege the allegations contained in each of the paragraphs of this Complaint as if fully set forth herein.   This claim is brought by Plaintiffs Maureen Van Meter, Kathleen O'Brien, Sandra Johannes and Valerie Thibodaux on behalf of class members who have had funds directly withdrawn from accounts at financial institutions by Defendant without the written authorization required under the EFTA.

105.   An "electronic fund transfer" is defined as "any transfer of funds . . . which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account." 15 U.S.C. § 1693a(6).

106.   Under the EFTA, a preauthorized electronic fund transfer from a consumer's account must be authorized by the consumer in writing and a copy of such authorization must be provided to the consumer when the authorization is made. 15 U.S.C. § 1693e.

107.   Further, "[i]n case of preauthorized transfers from a consumer's account to the same person which may vary in amount, the financial institution or designated payee shall, prior to each transfer, provide reasonable advance notice to the consumer . . . of the amount to be transferred and the scheduled date of the transfer." 15 U.S.C. § 1693e(b).

108.   DirecTV engages in electronic fund transfers as defined by the EFTA.

109.   Defendant deducted funds directly from Plaintiffs' debit accounts without first obtaining Plaintiffs' written authorization and/or without providing a copy of the authorization to Plaintiffs and/or without providing notice of the amount or date of transfer to Plaintiffs.

110.   Plaintiffs and Class members have been injured and damaged by

37

1   Defendant's practices.

2          111.  Plaintiffs and those similarly situated seek statutory damages and

3   reimbursements of monies transferred from their Financial Institutions by

4   Defendants in violation of the EFTA pursuant to 15 U.S.C. § 1693m.

5                                **COUNT III**

6                **(Violations of the Federal Communications Act)**

7          112.  Plaintiffs incorporate by reference and reallege the preceding

8   paragraphs of this Complaint as if fully set forth herein.  This claim is brought by all

9   Plaintiffs on behalf of themselves and all Class members.

10         113.  Defendant is a common carrier engaged in interstate or foreign

11  communication, and are subject to the common carrier regulations set forth at 47

12  U.S.C. §§ 201, *et seq.*

13         114.  Defendant's own Customer Agreement notes that enforcement of its

14  Agreement is governed by the "Communications Act of 1934," and "shall be

15  governed by the rules and regulations of the Federal Communications Commission."

16  Agreement ¶ 9 (c) and 10(b).

17         115.  Defendant's cancellation and non-activation fees described above are

18  charges in connection with communication service, subject to the requirements of 47

19  U.S.C. § 201(b).

20         116.  Defendant's cancellation and non-activation fees are unjust,

21  unreasonable and unlawful under 47 U.S.C. § 201(b).

22         117.  Plaintiffs and Class members have been injured and damaged by

23  Defendant's practices.

24         118.  Plaintiffs and those similarly situated seek reimbursement for any fees

25  imposed pursuant to 47 U.S.C. § 206, and reasonable attorneys' fees.

26  **VIOLATIONS OF CALIFORNIA CONSUMER PROTECTION LAW**

27         119.  All Plaintiffs seek to apply California law to the greatest extent possible

28  and to assert claims alleged below under Counts IV, V and VI.  To the extent that

                                        38

1    California law is ruled inapplicable to non-California resident Plaintiffs, the non-
2    resident Plaintiffs assert claims in the alternative under the consumer protection
3    statutes of their home states alleged below under Counts VII through XVII.

### COUNT IV

**(Violation of the Unfair Competition Law,**
**California Business & Professions Code Sections 17200, *et seq.*)**

7        120.  Plaintiffs  incorporate  by  reference  and  reallege  all  paragraphs
8    previously alleged herein.  This claim is brought by all Plaintiffs on behalf of
9    themselves and all Class members.

10        121.  The acts and practices engaged in by Defendant, and described herein,
11   constitute  unlawful,  unfair,  and/or  fraudulent  business  practices  in  that:
12   (a) Defendant's practices, as described herein, are unlawful, in that they violate,
13   *inter alia*, Cal. Civ. Code § 1671(d) and the California Consumers Legal Remedies
14   Act, Cal. Civ. Code §§ 1750, *et seq.*; the Electronic Funds Transfer Act, 15 U.S.C.
15   §§ 1693, *et seq.*; the Federal Communication Act, 47 U.S.C. § 201(b); and the
16   consumer protection laws of the Plaintiffs' home states set forth below in Counts
17   VII-XV; (b) Defendant's practices, as described herein, constitute money had and
18   received; (c) the justification for Defendant's conduct is outweighed by the gravity
19   of the consequences to Plaintiffs and Class members; (d) Defendant's conduct is
20   immoral, unethical, oppressive, unscrupulous or substantially injurious to Plaintiffs
21   and Class members; and/or (e) Defendant's conduct constitutes fraudulent, untrue or
22   misleading actions in that such conduct has a tendency to deceive a reasonable
23   person, including Plaintiffs and Class members.

24        122.  Plaintiffs have suffered injury in fact and have lost money or property
25   as a result of Defendant's unfair competition, as more fully alleged herein.

26        123.  Defendant's  unlawful,  unfair,  and  fraudulent  business  practices
27   include, but are not limited to, the following:

28            a.      imposing an ECF of upwards of $480 that is unreasonable,

1  invalid and unfair and hence a penalty, and representing that such amounts are due
2  and owed;

3            b.      charging early cancellation fees that are not reasonably related
4  to the loss or damage suffered by DirecTV;

5            c.      failing to disclose or adequately disclose material information,
6  including the commitment periods and ECFs;

7            d.      including   unconscionable   and   unenforceable   terms   and
8  conditions in the Equipment Lease Addendum and Customer Agreement;

9            e.      enforcing   unconscionable   and   unenforceable   terms   and
10  conditions against Class members, including terms and conditions that Class
11  members never accepted or otherwise agreed to;

12            f.      failing to disclose and/or failing to disclose adequately to Class
13  members that early cancellation penalties would be deducted directly from Class
14  members' bank or credit card accounts;

15            g.      collecting early cancellation penalties from Class members and
16  charging such fees directly to Class members' bank account or credit card without
17  authorization;

18            h.      advertising goods or services with the intent not to sell them as
19  advertised;

20            i.      implementing an early cancellation fee for the purpose of
21  retaining customers; and

22            j.      Defendant intended, or consciously disregarded, that Plaintiff
23  and absent Class members would rely on its omissions, misrepresentations, and
24  practices so that customers would become enrolled in Commitment Periods, and
25  face fees if they canceled service.

26        124.   Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs and Class
27  members are therefore entitled to equitable relief, including restitution of all monies
28  paid to DirecTV by the imposition of the ECF, disgorgement of all profits accruing to

40

1  DirecTV because of its unlawful, unfair and fraudulent business practices, a permanent
2  injunction enjoining DirecTV from its unlawful, unfair, and fraudulent business
3  activities as alleged herein, and appropriate declaratory relief as described herein.

**COUNT V**

**(Violation of the Consumers Legal Remedies Act,
California Civil Code Sections 1750, *et seq.*)**

7  125.  Plaintiffs incorporate by reference and reallege all paragraphs
8  previously alleged herein.  This claim is brought by all Plaintiffs on behalf of
9  themselves and all Class members.

10  126.  Defendant is a "person" within the meaning of Civil Code §§ 1761(c)
11  and 1770, and provides "services" within the meaning of Civil Code §§ 1761(b) and
12  1770.  Defendant's customers, including Plaintiffs and Class members, are
13  "consumers" within the meaning of Civil Code §§ 1761(d) and 1770.  Each payment
14  for DirecTV's service by each Plaintiff and other Class members constitutes a
15  "transaction" within the meaning of Civil Code §§ 1761(e) and 1770.

16  127.  Defendant violated § 1770(a)(14)'s proscription against representing
17  that a transaction confers or involves rights, remedies, or obligations which it does
18  not have or involve, or which are prohibited by law, including by concealing the
19  commitment periods, ECFs and lease terms from consumers, and from assessing the
20  related fees against Plaintiffs and Class members.

21  128.  Defendant violated § 1770(a)(19) by inserting unconscionable
22  provisions in the Customer Agreement, including the early cancellation clause and
23  other clauses that purport to force consumers to settle all disputes only by
24  arbitration, and to waive any right to bring a suit as a "representative member of a
25  class or in a private attorney general capacity."

26  129.  Defendant has a duty to disclose the long-term programming
27  commitment and ECF to Plaintiffs and Class members prior to completing the
28  transaction which allegedly triggered these contractual obligations.

41

1    130.   The facts concealed or inadequately disclosed by Defendant were

2  material, in that a reasonable person would have considered them important in deciding

3  whether or not to subscribe to DirecTV service, and/or purchase or lease receivers.

4    131.   Defendant's concealment and deceptive practices, in violation of the

5  CLRA, were designed to induce Plaintiffs and Class members to subscribe to

6  DirecTV service, and to purchase/lease its receivers.

7    132.   Defendant intended to do the act that was deceptive and/or fraudulent,

8  namely, to market DirecTV service, and to market, distribute, sell and lease

9  receivers, without disclosing the material terms of service described herein.

10    133.   Plaintiffs and Class members suffered actual damages as a direct result

11  of Defendant's concealment and/or omissions in violation of the CLRA, as

12  evidenced by Defendant's assessment of ECFs.

13    134.   To this day, DirecTV continues to violate the CLRA by concealing

14  material terms of its service agreements, by imposing undisclosed contracts, and by

15  assessing unreasonable ECFs.

16    135.   Plaintiffs have complied with California Civil Code § 1782(a) by

17  serving a preliminary notice before filing a complaint for damages under the

18  Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*   Defendant has

19  failed to remedy its conduct as demanded in Plaintiffs' preliminary notices.

20    136.   Pursuant to the provisions of Cal. Civ. Code § 1780, Plaintiffs on

21  behalf of themselves and Class members seek injunctive relief, restitution,

22  compensatory and punitive damages pursuant to Cal. Civ. Code §§ 1780, 1782(b) as

23  requested herein, and any other relief this Court deems appropriate.

## COUNT VI

### (Violations of California Civil Code Section 1671)

26    137.   Plaintiffs incorporate by reference and reallege all paragraphs

27  previously alleged herein.   This claim is brought by all Plaintiffs on behalf of

28  themselves and all Class members.

42

138.   It is neither impractical nor extremely difficult for DirecTV to determine the actual amount of damages occasioned by a customer's early cancellation of the purported contract.

139.   DirecTV's ECFs bear no reasonable relationship to the actual costs incurred by DirecTV when customers cancel their service.   Rather, the ECFs are intended as a penalty to dissuade Class members from cancelling DirecTV's service.

140.   Based on the foregoing, the ECF is an invalid liquidated damages provision.   DirecTV's imposition of the ECF violates Cal. Civ. Code § 1671(d) and is unlawful, void, and unenforceable under this statute.

141.   Plaintiffs and Class members have suffered harm as a proximate result of the violations of law and wrongful conduct of DirecTV as alleged herein. Pursuant to Cal. Civ. Code § 1671(d), Plaintiffs seek an order of this Court declaring the early cancellation clause contained in the Equipment Lease Addendum void and preliminarily and permanently enjoining DirecTV from further enforcement and collection of ECFs as alleged herein.

142.   Plaintiffs also seek an order requiring DirecTV to:

       a.     Immediately cease its unlawful practices;

       b.     Make full restitution of all money wrongfully obtained; and

       c.     Disgorge all ill-gotten revenues and/or profits.

## VIOLATION OF STATE CONSUMER PROTECTION LAWS

143.   To the extent that California law is ruled inapplicable to non-California resident Plaintiffs, the following Plaintiffs assert the following claims, in the alternative, under the consumer protection statutes of their home states.

## COUNT VII

### (Violation of Arizona's Consumer Fraud Act, Sections 44-1521, *et seq.*)

144.   Plaintiffs incorporate by reference and reallege all paragraphs alleged herein.   This claim is brought by Plaintiff Christine Slakans on behalf of herself and an Arizona Class.   Plaintiff pleads this claim in the alternative should her claim

43

1   under Counts IV, V and VI fail or be dismissed.

2        145.   This claim is brought against Defendant pursuant to the Arizona

3   Consumer Fraud Act ("ACFA"), §§ 44.1521, *et seq.*

4        146.   Defendant is a "person" within the meaning of the ACFA.

5        147.   Defendant sells "merchandise" within the meaning of the ACFA.

6        148.   Defendant sells, offers for sale, advertises, and/or leases its DirecTV

7   equipment and programming services within the meaning of the ACFA.

8        149.   Defendant has acted, used, or employed deception, a deceptive act or

9   practice, fraud, false pretense, false promise, misrepresentation, or concealment,

10   suppression or omission of material facts in connection with its sales or leases of

11   DirecTV equipment and programming services in violation of the ACFA.

12        150.   Defendant's conduct violated and continues to violate the ACFA in at

13   least the following respects:

14        a.   imposing an ECF of upwards of $480 that is unreasonable,

15   invalid and unfair and hence a penalty, and representing that such amounts are due

16   and owed;

17        b.   charging early cancellation fees that are not reasonably related

18   to the loss or damage suffered by DirecTV;

19        c.   failing to disclose or adequately disclose material information,

20   including the commitment periods and ECFs;

21        d.   including unconscionable and unenforceable terms and

22   conditions in the Equipment Lease Addendum and Customer Agreement;

23        e.   enforcing unconscionable and unenforceable terms and

24   conditions against Class members, including terms and conditions that Class

25   members never accepted or otherwise agreed to;

26        f.   failing to disclose and/or failing to disclose adequately to Class

27   members that early cancellation penalties would be deducted directly from Class

28   members' bank or credit card accounts;

44

1          g.      collecting early cancellation penalties from Class members and

2   charging such fees directly to Class members' bank account or credit card without

3   authorization;

4          h.      advertising goods or services with the intent not to sell them as

5   advertised;

6          i.      implementing an early cancellation fee for the purpose of

7   retaining customers; and

8          j.      Defendant intended, or consciously disregarded, that Plaintiff

9   and absent Class members would rely on its omissions, misrepresentations, and

10  practices so that customers would become enrolled in Commitment Periods, and

11  face fees if they canceled service.

12      151.   Plaintiff and the Class members have suffered injury in fact as a result

13  of Defendant's unlawful, unfair, or fraudulent practices, in that, among other things:

14         a.      Plaintiff and Class members have been accessed Early

15  Cancellation Fees;

16         b.      Plaintiff and Class members would not have paid for DirecTV

17  equipment and service had they known of the Programming Commitment and Early

18  Cancellation Fees.

19      152.   The above-described deceptive business practices conducted by

20  Defendant presents a threat and likelihood of harm and deception to members of the

21  Class in that Defendant has systematically perpetrated and continues to perpetrate

22  the fraudulent conduct upon members of the public and consumers are likely to be

23  misled by such conduct.

24      153.   The Programming Commitment and Early Cancellation Fees are terms

25  which are material to consumers in that a reasonable person would have considered

26  them important factors in deciding whether to complete the transaction for DirecTV

27  Equipment and Programming Services.

28      154.   As a result of Defendant's acts and practices as alleged in this

45

1    Complaint, Plaintiff and Class members have been harmed.

2    ## COUNT VIII

3    **(Violation of Florida's Deceptive and Unfair Trade Practices Act,**

4    **Florida Statute Sections 501.201, *et seq.* ("FDUTPA")**

5    155.   Plaintiffs incorporate by reference and reallege all paragraphs alleged

6    herein.  This claim is brought by Plaintiffs Joseph Lombardi, Kathleen O'Brien,

7    Sandra Johannes and Ira Boshnack on behalf of themselves and a Florida Class.

8    Plaintiffs plead this claim in the alternative should their claims under Counts IV, V

9    and VI fail or be dismissed.

10   156.   At all relevant times, Plaintiffs Lombardi, O'Brien, Johannes and

11   Boshnack and all members of the Florida Class were consumers within the meaning

12   of FDUPTA.

13   157.   At all relevant times hereto, DirecTV engaged in trade and/or

14   commerce within the meaning of FDUTPA.

15   158.   The acts and practices DirecTV engaged in that violate the FDUTPA

16   include the following:

17           a.    imposing an ECF of upwards of $480 that is unreasonable,

18   invalid and unfair and hence a penalty, and representing that such amounts are due

19   and owed;

20           b.    charging early cancellation fees that are not reasonably related

21   to the loss or damage suffered by DirecTV;

22           c.    failing to disclose or adequately disclose material information,

23   including the commitment periods and ECFs;

24           d.    failing to disclose or adequately disclose the terms of the lease

25   associated with DirecTV's service;

26           e.    including  unconscionable  and  unenforceable  terms  and

27   conditions in the Equipment Lease Addendum and Customer Agreement;

28           f.    enforcing  unconscionable  and  unenforceable  terms  and

46

1   conditions against Class members, including terms and conditions that Class
2   members never accepted or otherwise agreed to;

3           g.      failing to disclose and/or failing to disclose adequately to Class
4   members that early cancellation penalties would be deducted directly from Class
5   members' bank or credit card accounts;

6           h.      collecting early cancellation penalties from Class members and
7   charging such fees directly to Class members' bank account or credit card without
8   authorization;

9           i.      advertising goods or services with the intent not to sell them as
10  advertised;

11          j.      implementing an early cancellation fee for the purpose of
12  retaining customers; and

13          k.      Defendant intended, or consciously disregarded, that Plaintiff
14  and absent Class members would rely on its omissions, misrepresentations, and
15  practices so that customers would become enrolled in Commitment Periods, and
16  face fees if they canceled service.

17      159.  By the conduct described herein, DirecTV has engaged in unfair
18  methods of competition, unconscionable acts or practices, and unfair or deceptive
19  acts or practices in the conduct of business, trade and commerce.

20      160.  The representations or omissions by DirecTV were intentional,
21  negligent, or reckless and done willingly and knowingly.    Defendant's
22  representations and omissions were materially deceptive and likely to deceive
23  reasonable consumers or persons and a reasonable consumer or person would have
24  relied on these representations and omissions and would have considered them
25  important in deciding to subscribe to Defendant's satellite service and
26  purchase/lease DirecTV's receivers.

27      161.  Had DirecTV disclosed all material information regarding its satellite
28  services to Plaintiffs Lombardi, O'Brien, Johannes and Boshnack and all of the

47

1  Florida Class members, they would not have subscribed to DirecTV's services and
2  purchased/leased its receivers.

3      162.  The foregoing acts and practices proximately caused Plaintiffs
4  Lombardi, O'Brien, Johannes and Boshnack and all other members of the Florida
5  Class to suffer actual damages and they are entitled to recover such damages,
6  attorneys' fees, and costs of suit and other non-monetary relief as appropriate.

7                              **COUNT IX**
8      **(Violation of Illinois Consumer Fraud and Deceptive Business Practices Act,**
9          **Illinois Comp. Statute 505/1, *et seq.* ("ICFA")**

10     163.  Plaintiffs incorporate by reference and reallege all paragraphs alleged
11  herein.  This claim is brought by Plaintiff Christine Schuessler on behalf of herself
12  and an Illinois Class.  Plaintiff pleads this claim in the alternative should her claim
13  under Counts IV, V and VI fail or be dismissed.

14     164.  At all relevant times, Plaintiff Schuessler and all members of the
15  Illinois Class were consumers within the meaning of ICFA.

16     165.  At all relevant times hereto, DirecTV engaged in trade and/or
17  commerce within the meaning of ICFA.

18     166.  The acts and practices DirecTV engaged in that violate ICFA include
19  the following:

20         a.  imposing an ECF of upwards of $480 that is unreasonable,
21  invalid and unfair and hence a penalty, and representing that such amounts are due
22  and owed;

23         b.  charging early cancellation fees that are not reasonably related
24  to the loss or damage suffered by DirecTV;

25         c.  failing to disclose or adequately disclose material information,
26  including the commitment periods and ECFs;

27         d.  including unconscionable and unenforceable terms and
28  conditions in the Equipment Lease Addendum and Customer Agreement;

                                    48

e.   enforcing unconscionable and unenforceable terms and conditions against Class members, including terms and conditions that Class members never accepted or otherwise agreed to;

f.   failing to disclose and/or failing to disclose adequately to Class members that early cancellation penalties would be deducted directly from Class members' bank or credit card accounts;

g.   collecting early cancellation penalties from Class members and charging such fees directly to Class members' bank account or credit card without authorization;

h.   advertising goods or services with the intent not to sell them as advertised;

i.   implementing an early cancellation fee for the purpose of retaining customers; and

j.   Defendant intended, or consciously disregarded, that Plaintiff and absent Class members would rely on its omissions, misrepresentations, and practices so that customers would become enrolled in Commitment Periods, and face fees if they canceled service.

167.   By the conduct described herein, DirecTV has engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of trade or commerce.

168.   The representations or omissions by DirecTV were likely to deceive reasonable consumers and a reasonable consumer would have relied on these representations and omissions.

169.   Had DirecTV disclosed all material information regarding its satellite services to Plaintiff Schuessler and all of the Illinois Class members, they would not have subscribed to DirecTV's services.

170.   The foregoing acts and practices proximately caused Plaintiff Schuessler and all other members of the Illinois Class to suffer actual damages and

49