UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE DIRECTV EARLY CANCELLATION FEE MARKETING AND SALES PRACTICES LITIGATION<br><br>This document relates to:<br><br>Plaintiffs Annette Kahaly, John Mulea, Maureen Van Meter, Ira Boshnack, Sean and Tara Murray, Louis Wilson and Carolyn Forbes, Tracy Twyman, Keith and Jana Harper, Eben Paguirigan, Paul and Karen Brice, Joseph Lombardi, Kathleen O'Brien, Sandra Johannes, Gary Smith, Christine Slakans, Christine Schuessler, and Roberta and Edward Pifer<br>_____ | CASE NO. ML 09-2093 AG (ANx)<br><br>**ORDER DENYING MOTION TO RECONSIDER, GRANTING IN PART MOTION TO COMPEL, DENYING REQUEST FOR MORE DISCOVERY, AND ORDERING FURTHER BRIEFING** |

The Supreme Court's ruling in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011) changes the arbitration landscape and thus alters the course of this case. This Court previously granted in part and denied in part a motion to compel arbitration filed by Defendant DirecTV ("Defendant") in an order dated September 7, 2010 ("September 2010 Order"). After

*Concepcion* appeared on the horizon, the Court stayed this multi-district litigation pending the outcome of that case.

Defendant DirecTV ("Defendant") now brings a "Motion to Reconsider Under Local Rule 7-18 And Motion to Dismiss Or Stay Proceedings Pending Arbitration And To Compel Arbitration." (Dkt. # 213.) The Court will break that down into three separate motions, all addressed in this Order. First, the Court addresses the Motion to Reconsider regarding the Court's ruling in the September 2010 Order denying Defendant's motion to compel as to certain Plaintiffs. Defendant has appealed the portion of the September 2010 Order it now asks the Court to reconsider, so the Court will address that procedural issue. Second, the Court addresses the Motion to Compel regarding Plaintiffs who were not included in Defendant's previous motion to compel. And third, the Court addresses the Motion to Dismiss Or Stay, which is applicable to any Plaintiffs who will now be subject to arbitration.

The Court ISSUES an indicative ruling regarding the Motion to Reconsider. The Court GRANTS in part and DENIES in part the Motion to Compel. The Court DENIES Plaintiffs' request for more discovery. The Court ORDERS further briefing on the Motion to Dismiss or Stay, as described in Section 4.

**BACKGROUND**

Plaintiffs' claims concern Defendant's alleged practice of charging improper early cancellation fees to their customers. The operative complaint is a Third Amended Class Action Complaint, filed on behalf of the named plaintiffs and a putative class.

Defendant's customers are subject to the DirecTV Customer Agreement ("Customer Agreement"). (Declaration of Valerie McCarthy, Ex. F.) Within the Customer Agreement is a section entitled "Resolving Disputes," which provides for arbitration of most claims. (Id., Ex. F, § 9.) Section 9 is referred to by the parties and the Court as the "Arbitration Clause." The Customer Agreement was revised in 2007, 2009, and 2010, but the relevant provisions are substantially identical. Various Plaintiffs are bound by different versions of the Customer

2

Agreement. The Arbitration Clause also includes a class action waiver that is not severable from the rest of the clause, and a statement that if the class action waiver is unenforceable, then the arbitration clause is unenforceable. The Court addresses this in more detail later in this Order.

The first case in this multi-district litigation was filed in July 2008. The Judicial Panel on Multidistrict Litigation transferred to this Court the cases pending in various federal district courts. The parties have engaged in several rounds of motions regarding arbitration or dismissal of claims. In November 2010, the Court stayed litigation pending *Concepcion*. After the Supreme Court ruled on *Concepcion*, the Court lifted the stay in May 2011, and Defendant filed this Motion shortly thereafter. This Court, along with courts around the country, must now sort out the effect of *Concepcion* on previous rulings and on future rulings. *See* Gabe Friedman, *Judges Grapple With Arbitration Clauses After* Concepcion, DAILY JOURNAL, Aug. 5, 2011, at 1.

**PRELIMINARY MATTERS**

The parties have filed numerous objections. The Court has reviewed the objections filed here and relies only on admissible evidence. *See F.T.C. v. Neovi, Inc.*, 598 F. Supp. 2d 1104, 1118 n.5 (S.D.Cal. 2008) ("The parties have each filed evidentiary objections. However, in deciding the present motions, the Court has only relied upon admissible evidence."); *Schroeder v. San Diego Unified School Dist.*, No. 07cv1266-IEG (RBB), 2009 WL 1357414, at *2, n.1 (S.D.Cal. May 13, 2009). *See also*, *Doe v. Starbucks, Inc.*, No. SACV 08-0582 AG (CWx), 2009 WL 5183773, at *1 (C.D.Cal. Dec. 18, 2009).

The parties have also filed numerous supplemental recent decisions that address issues raised in the present Motions. The Court has reviewed the filings and has relied on them where necessary.

**ANALYSIS**

After *Concepcion*, Defendant now wants to compel arbitration with all Plaintiffs. Previously, Defendant chose not to seek to compel arbitration with some Plaintiffs because of clearly adverse state law. But the law has now changed. For purposes of these Motions, Plaintiffs fall into three categories. The procedural status of each Plaintiff affects what Defendant now asks the Court to do.

First, there are those Plaintiffs against whom Defendant previously did not seek to compel arbitration. These are Plaintiffs from California, New Jersey, Oregon, and Washington. Those states had rules that most consumer arbitration agreements with class action waivers were unenforceable, so Defendant determined that seeking to compel arbitration would be futile. Defendant now moves to compel arbitration with those Plaintiffs. Those are Plaintiffs Kahaly, Mulea, and Van Meter from California, Plaintiffs the Murrays from New Jersey, Plaintiffs Forbes and Wilson from Oregon, and Plaintiffs Twyman, the Harpers, Paguirigan, and the Brices from Washington.

Second, there are those Plaintiffs against whom Defendant previously moved to compel arbitration and the Court granted the motion to compel. Those are Plaintiffs Wilson and Jones from Louisiana, Plaintiff McBroom from South Carolina, and Plaintiff Folkerth from New York. These four Plaintiffs are not subject to the current Motion.

Third, there are those Plaintiffs against whom Defendant previously moved to compel arbitration and the Court denied the motion to compel. Some of these Plaintiffs filed suit in California although they are from other states. They are Plaintiffs O'Brien and Lombardi from Florida, Plaintiff Schuessler from Illinois, and Plaintiffs the Pifers from Virginia. The Court concluded that California law applied to those Plaintiffs and denied the motion to compel on that basis. For other Plaintiffs, the Court applied the law of their home state and determined that the Arbitration Clause was unenforceable. These Plaintiffs are Plaintiff Slakans from Arizona,

Plaintiff Boshnack and Johannes from Florida, and Plaintiff Smith from Pennsylvania. Defendant asks the Court to reconsider its prior ruling as to these Plaintiffs.

The Court begins with the Motion to Reconsider.

**1.      MOTION TO RECONSIDER**

Ordinarily, a motion to reconsider is governed by Local Rule 7-18, which allows reconsideration based on previously unknown fact or law, new material facts or a change in the law, or the court's failure to consider material facts. But here, the issues subject to the Motion to Reconsider are currently on appeal to the Ninth Circuit. *See* Dkt. # 117, Notice of Appeal. Thus, the Court looks to Federal Rule of Civil Procedure 62.1, which guides the Court when it lacks jurisdiction or authority due to a pending appeal. As set forth previously, Defendant asks the Court to reconsider its denial of a motion to compel as to Plaintiffs in the third group just described, who are O'Brien, Lombardi, Schuessler, the Pifers, Slakans, Boshnack, Johannes, and Smith.

Rule 62.1(a) states, "If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." The statements issuable under Rule 62.1(a)(3) are often referred to as "indicative rulings." *See* Fed. Ct. App. Manual § 15:12.5 (5th ed.). If the district court issues an indicative ruling – either that it would grant the motion or that there are substantial issues – the court of appeals then decides whether to remand the case for a ruling by the district court. A statement that the motion raises substantial issues does not tie the district court to a particular ruling on the motion after remand.

Here, the Court lacks authority to rule on the question of compelling arbitration as to the listed Plaintiffs because that issue is on appeal. Thus, the Court may either defer ruling, deny the Motion to Reconsider, or issue an indicative ruling. Defendant asks the Court to issue an indicative ruling stating that it intends to grant the motion. Plaintiffs do not address Rule 62.1.

5

The holding of *Concepcion* raises substantial issues regarding the Court's ruling denying arbitration in the September 2010 Order. In denying the previous motion to compel regarding many of the Plaintiffs, the Court relied on California's strong public policy against arbitration, which was based on the *Discover Bank* rule. *Discover Bank v. Superior Court*, 36 Cal. 4th 148 (2005). Since the Supreme Court overruled the *Discover Bank* rule in *Concepcion*, this Court's previous ruling is on less sure footing. Without a thorough analysis – which is not appropriate here given the Ninth Circuit's current jurisdiction over this issue – the Court cannot be sure that it would grant Defendant's motion in full. But there are certainly substantial issues raised in Defendant's request for reconsideration.

If the Ninth Circuit chooses to remand, the Court will consider the issues at that time. But considering the significant impact of *Concepcion* and questions about its ramifications, the Ninth Circuit may elect to retain jurisdiction and rule on the pending appeal rather than remand.

Thus, the Court ISSUES an indicative ruling of substantial issues under Rule 62.1 regarding Defendant's Motion to Reconsider, and the Ninth Circuit will then determine whether to remand the issues on appeal or whether to retain jurisdiction to adjudicate the appeal.

**2.      MOTION TO COMPEL**

The other group of Plaintiffs now before the Court are those against whom Defendant did not previously move to compel arbitration. These Plaintiffs are from California, New Jersey, Oregon, and Washington. Defendant argues that, when it moved to compel arbitration previously, those four states "had adopted rules that invalidated most consumer arbitration agreements containing class action waivers." (Motion at 8:7-8.) Thus, Defendant argues, "[its] hands were effectively tied." (*Id*. at 8:21-22.) But Defendant contends that *Concepcion* changes everything.

Plaintiffs have presented multiple arguments for why the Court should not compel arbitration here. The Court will now address those arguments, although not in the order presented by Plaintiffs. First, Plaintiffs argue that Defendant waived its right to seek arbitration.

Second, Plaintiffs argue that the Arbitration Clause is unconscionable, both procedurally and substantively. Third, Plaintiffs argue that, as a matter of contract law, Plaintiffs from California, New Jersey, Oregon, and Washington did not agree to the Arbitration Clause. And fourth, Plaintiffs argue that their claims for injunctive relief under the UCL and CLRA are not arbitrable.

### 2.1 Waiver

Plaintiffs argue that Defendant has waived its right to compel arbitration as to the Plaintiffs from California, Oregon, Washington, and New Jersey. "A party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Hoffman Constr. Co. v. Active Erectors and Installers, Inc.*, 969 F.2d 796, 798 (9th Cir. 1992) (quoting *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986)). A party arguing waiver of arbitration bears a heavy burden, as "[w]aiver of a contractual right to arbitration is not favored." *Fisher*, 791 F.2d at 694.

Regarding the first factor, Plaintiffs don't really argue that Defendant had knowledge of an existing right to compel arbitration. Plaintiffs would be hard-pressed to established that there was a right to compel arbitration pre-*Concepcion* for the Plaintiffs from California, Oregon, Washington, and New Jersey. In *Fisher*, the Ninth Circuit concluded that "[u]ntil the Supreme Court's decision in [a recent case], the arbitration agreement in this case was unenforceable. Therefore, the Fishers have failed to demonstrate that Becker acted inconsistently with a known existing right to compel arbitration." *Fisher*, 791 F.2d at 697. Here, until the Supreme Court's decision in *Concepcion*, the arbitration agreements in California, Oregon, Washington, and New Jersey would have been unenforceable, so there was no *existing* right. When a motion to compel arbitration would be futile, there is no existing right. *Letizia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986). Plaintiffs here fail to argue that a motion to compel as to

7

the California, Oregon, Washington, and New Jersey Plaintiffs would have been anything but futile.

Under *Hoffman*, a plaintiff must satisfy all three prongs to demonstrate waiver. Although Plaintiffs have failed to satisfy the first prong, the Court reviews the remaining prongs for the sake of complete analysis. Since there was no existing right to compel arbitration against Plaintiffs from those states, Defendant could not have acted inconsistently with any such right. Regarding prejudice, Plaintiffs argue that they have "spent enormous amounts of time and money investigating their claims through discovery," which they would not have done in arbitration. (Opposition at 36:8-9.) But if the Court adopted Plaintiffs' argument that there was a known right to compel arbitration, then Plaintiffs would have been litigating at their own peril, and *Fisher* found that such expense is "self-inflicted." *Fisher*, 791 F.2d at 698. Additionally, because the Court finds that the UCL and CLRA claims are not subject to arbitration, the discovery undertaken by Plaintiffs is still useful in this litigation, and Plaintiffs have not been prejudiced.

The Court concludes that Defendant has not waived its right to compel arbitration as to Plaintiffs from California, Washington, Oregon, and New Jersey. The Court now moves on to other issues regarding the Motion to Compel.

**2.2     Unconscionability**

Plaintiffs argue that the Arbitration Clause is unconscionable under applicable state law. While Plaintiffs briefly argue that California law should apply to all Plaintiffs, it appears that the parties had previously agreed that the home state law should apply to complaints initially filed in their home states. *See* September 2010 Order at 17:9-11. Defendant argues that the law of a Plaintiff's home state should apply, although they make this argument in the context of discussing Plaintiffs covered by the Motion to Reconsider, not the Motion to Compel. (Motion at 13-14.) The Court previously applied California law to certain non-California Plaintiffs on the basis of *Masters v. DirecTV*, Nos. 08-55825, 08-55830, 2009 WL 4885132 (9th Cir. Nov. 19,

1  2009). But *Masters* relies heavily on *Discover Bank*, which is no longer good law after
2  *Concepcion*. The Court concludes that it should apply the home state law of each Plaintiff.
3       As *Concepcion* made clear, the savings clause of the FAA still "permits agreements to
4  arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or
5  unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning
6  from the fact that an agreement to arbitrate is at issue." *Concepcion*, 131 S.Ct. at 1746 (quoting
7  *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). Plaintiffs argue here that
8  general contract principles of unconscionability would still render Defendant's arbitration clause
9  unenforceable.
10      There are two categories of unconscionability: procedural and substantive. Some states
11 require a showing of both procedural and substantive unconscionability, while other states may
12 require a showing of only one or the other. Procedural unconscionability refers to the manner in
13 which a contract was made, while substantive unconscionability refers to whether the contract
14 terms are fair. The Court considers unconscionability under the laws of each of the four states
15 relevant here.

17      2.2.1   California Unconscionability

19      Under California law, Plaintiffs must prove both substantive and procedural
20 unconscionability. Procedural unconscionability involves "oppression or surprise due to unequal
21 bargaining power." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996,
22 1004 (9th Cir. 2010). Substantive unconscionability, on the other hand, "addresses the fairness
23 of the term in dispute." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 997 (9th Cir. 2010). A court
24 considering substantive unconscionability should inquire "whether the term is one-sided and will
25 have an overly harsh effect on the disadvantaged party." *Id*.
26      The Court turns first to substantive unconscionability, where Plaintiffs make two
27 arguments. First, Plaintiffs argue that arbitration of individual claims against DirecTV would be
28 prohibitively expensive and that it would be difficult for Plaintiffs to find counsel. Second,

1  Plaintiffs argue that the Arbitration Clause is unconscionable because it allows Defendant to
2  litigate claims while Plaintiffs are obligated to arbitrate.
3        Plaintiffs' arguments about prohibitive expense and difficulty obtaining counsel are an
4  attempt to relitigate *Concepcion*. As stated in a recent case, "After *Concepcion*, [plaintiff's]
5  argument that provisions of his arbitration agreement effectively establishes barriers to bringing
6  small claims in arbitration, thereby exempting [Defendant] from liability is untenable." *In re*
7  *Apple and AT&T iPad Unlimited Data Plan Litigation*, No. C–10–02553 RMW, 2011 WL
8  2886407, at *4 (N.D. Cal. July 19, 2011) (internal quotation marks omitted). The dissent in
9  *Concepcion* addressed with sympathy the argument about how plaintiffs would be unable to find
10  attorney representation in the absence of class actions, but the majority apparently was
11  unconvinced. *Concepcion*, 131 S. Ct. at 1761 (dissent). Thus, because of *Concepcion*,
12  Plaintiff's first argument regarding substantive unconscionability fails.
13        Plaintiffs' second argument regarding substantive unconscionability, about lack of
14  mutuality, is based on a faulty premise. The relevant section of the Arbitration Clause states that
15  certain listed types of claims "may be decided only by a court of competent jurisdiction."
16  (Declaration of Valerie McCarthy In Support of Motion, Ex. F, at Section 9(d).) The list
17  includes claims under the Communications Act of 1934, the Digital Millenium Copyright Act,
18  the Electronic Communications Privacy Act, or "any other statement or law governing theft of
19  service." (*Id.*) This section of the Arbitration Clause does not limit those rights to Defendant
20  only, and it is conceivable that a plaintiff might have a claim against Defendant for violation of
21  those statutes. While Plaintiffs contend that the Customer Agreement "requires one contracting
22  party, but not the other, to arbitrate all claims," even a quick reading of the Arbitration Clause
23  reveals that this is untrue. (Opposition at 29:12-13, quoting *Corin v. Cintas Corp.*, No. CIV.
24  S-09-2384 FCD/KJM, 2009 WL 5206712, at *7 (E.D. Cal. Dec. 18, 2009).) Plaintiffs are
25  empowered to litigate certain claims as well. Further, substantive unconscionability requires
26  more than a contract that sometimes favors the drafter. Even if the Customer Agreement skews
27  in favor of Defendant in some respects, the terms of the Arbitration Clause regarding litigating
28  certain claims cannot be categorized as "overly harsh." *Pokorny*, 601 F.3d at 997. The

Arbitration Clause largely incorporates the provisions in the rules of a reputable arbitration organization, and those rules have not been shown to be "overly harsh." Because Plaintiffs have failed to demonstrate sufficient substantive unconscionability, the unconscionability argument fails with regards to Plaintiffs Kahaly, Mulea, and Van Meter.

### 2.2.2 Washington Unconscionability

Under Washington law, substantive unconscionability alone is enough to render an agreement unenforceable. *Adler v. Fred Lind Manor*, 153 Wash. 2d 331, 346-47 (Wash. 2004) ("[W]e now hold that substantive unconscionability alone can support a finding of unconscionability."). The *Adler* court "decline[d] to consider whether [procedural unconscionability] alone will support a claim of unconscionability." *Id*. But a subsequent Washington state case, considering *Adler*, held that "in the absence of any substantive unconscionability, we cannot conclude that the demonstrated procedural unconscionability by itself precludes enforcement of an otherwise unremarkable arbitration agreement." *Ayala v. Continental Services*, No. 61029-5-I, 2008 WL 4069456, *3 (Wash. Ct. App., Sept. 2, 2008). Under *Ayala*, it appears that Washington law does not permit a finding of unenforceability based on procedural unconscionability alone. Thus, this Court follows the holdings of *Adler* and *Ayala* and concludes that unenforceability requires a finding of substantive unconscionability.

In Washington, "'[s]hocking to the conscience', 'monstrously harsh', and 'exceedingly calloused' are terms sometimes used to define substantive unconscionability." *Nelson v. McGoldrick*, 127 Wash. 2d 124, 131 (1995). Plaintiffs' arguments for substantive unconscionability are intended to apply to all states, and as discussed above, Plaintiffs' substantive unconscionability arguments are not sufficient after *Concepcion*. Without a showing of substantive unconscionability, Plaintiffs have not met their burden of showing that the Arbitration Clause is unconscionable under Washington law. Accordingly, Plaintiffs' unconscionability argument fails as to Plaintiffs Twyman, the Harpers, Paguirigan, and the Brices.

### 2.2.3  Oregon Unconscionability

Under Oregon law, while "both procedural and substantive unconscionability are relevant, . . . only substantive unconscionability is absolutely necessary." *Vasquez-Lopez v. Beneficial Oregon, Inc.*, 210 Or. App. 553, 567 (2007). Thus, even if Plaintiffs can demonstrate procedural unconscionability under Oregon law, they must still show substantive unconscionability as well. *See King v. Town & Country Chrysler Inc.*, Civ. No. 10–1237–AC, 2011 WL 1059108, at *2 (D. Or. Mar. 21, 2011). To show procedural unconscionability, a plaintiff must demonstrate more than just the adhesive nature of a contract. *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1094 (9th Cir. 2009). A plaintiff must also demonstrate surprise, which can "involve[] the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the terms." *Vasquez-Lopez*, 210. Or. App. at 566.

As discussed previously in this Order, Plaintiffs' substantive unconscionability arguments do not succeed. And even if they could succeed, it unlikely that Plaintiffs could successfully demonstrate surprise, since the first page of the Customer Agreement clearly states that the agreement is subject to arbitration. (McCarthy Decl., Ex. F. Intro.) Thus, Plaintiffs' unconscionability arguments fail with regard to Plaintiffs Forbes and Wilson.

### 2.2.4  New Jersey Unconscionability

Under New Jersey law, Plaintiffs must demonstrate both procedural and substantive unconscionability. "Procedural unconscionability includes, among other things, various inadequacies like age, literacy, and lack of sophistication." *Travelodge Hotels, Inc. v. Honeysuckle Enterprises, Inc.*, 357 F. Supp. 2d 788, 801 (D.N.J. 2005). "Substantive unconscionability describes an exchange of promises that is so one-sided as to 'shock the conscience' of the court." *Id*. Needless to say, a "shocks the conscience" standard is a high bar.

Plaintiffs have not set forth sufficient arguments regarding substantive unconscionability. Accordingly, because substantive unconscionability is necessary for an overall showing of unconscionability, Plaintiffs' argument fails as to Plaintiffs the Murrays.

### 2.2.5 Conclusion

Plaintiffs' arguments about unconscionability fail for all of the Plaintiffs now subject to this Motion to Compel.

### 2.3 Contract Law Arguments

Plaintiffs first argue that the Arbitration Clause is not enforceable by its own terms. However, Plaintiffs concede for purposes of this Motion to Compel that the Customer Agreement as a whole was a valid agreement. (Opposition at 9, fn. 8.) They argue that, at the time the Plaintiffs from California, New Jersey, Oregon, and Washington agreed to the Customer Agreement, the laws of their home states would not have enforced the Arbitration Clause and thus it is not enforceable now. The Arbitration Clause states that "[i]f . . . the law of your state would find this agreement to dispense with class arbitration procedures unenforceable, then this entire Section 9 is unenforceable." (McCarthy Decl., Ex. 3, § 9(c)(ii).) The Court will refer to this language as the "Non-Severability Clause."

Plaintiffs contend that "[a]n elementary rule of contract interpretation in every jurisdiction is to give effect to the mutual intention of the parties as it existed at the time the contract was entered into." (Opposition at 10:22-24.) Plaintiffs rely on *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754 (9th Cir. 1988). In *Van Ness*, an arbitration clause expressly excluded claims arising "under certain of the federal securities laws." *Id*. at 757. The Ninth Circuit concluded in *Van Ness* that the "the arbitration agreement does not apply to the appellants' securities claims," so arbitration could not be compelled. *Id*. at 758. But the Ninth Circuit rested this decision on the "express exclusion from arbitration" of certain claims. *Id*. In

13

making this determination, the Ninth Circuit rejected the argument that "arbitrability of a particular dispute is determined by the substantive law at the time of the hearing." *Id*.

Defendant argues that the Arbitration Clause here is distinguishable from the one in *Van Ness*. Defendant contends that the word "would" in the Non-Severability Clause means that the Clause was intended to put the parties on notice about potential limits on arbitration. In *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1144 (9th Cir. 1991), the Ninth Circuit found that similar "would" language "merely places the parties on notice that the agreement does not waive any rights they may have under the federal securities laws that cannot be waived under such laws." *Id*. at 1143-44. The *Three Valleys* court concluded that "[s]uch a provision should be read expansively and we see no reason to freeze its scope as of the date of the execution of the contract." *Id*. at 1144. In another case cited by Defendant, *Paulson v. Dean Witter Reynolds, Inc*., 905 F.2d 1251, 1255, the Ninth Circuit rejected the argument that the parties had "incorporated the law existing at the time of formation into their [arbitration] agreements," where the arbitration agreement simply called for arbitration of "any controversy."

Here, the Court finds the reasoning of *Three Valleys* to be on point. The language of the Non-Severability Clause demonstrates that the parties agree simply to be bound by the applicable law whenever arbitration is sought. Unlike in *Van Ness*, the Non-Severability Clause does not exempt any particular type of claim from arbitration. In *Van Ness*, the application of the arbitration clause was not explicitly contingent on outside sources, such as the Arbitration Clause here referring to "the law of your state." (McCarthly Decl., Ex. 3, § 9(c)(ii).) Thus, there was no reason for the clause in *Van Ness* to vary in meaning depending on changes in the law, while here, the Non-Severability Clause is contingent, and in fact its effect varied for different Plaintiffs depending on their home state. Plaintiffs' related arguments likewise fall short.

Plaintiffs also argue that "[f]ederal preemption is irrelevant where the arbitration provision's language shows that the parties privately and voluntarily agreed to be bound exclusively by state law." (Opposition at 18:3-5.) But Defendant points out that the Arbitration Clause states: "Notwithstanding the foregoing, Section 9 shall be governed by the Federal Arbitration Act." (McCarthy Decl., Ex. f, § 10(b).) Plaintiffs seem to contend that the non-

severability clause – which mentions state law – renders that statement about the FAA to be meaningless. But the language of the Arbitration Clause is clear that the parties intended for federal law to apply. Thus, this argument falls short.

**2.4  Arbitration of Claims for Injunctive Relief**

California law provides that certain types of claims for injunctive relief are not subject to arbitration. In *Broughton v. Cigna Healthplans of California*, 21 Cal. 4th 1066, 1080 (1999), the California Supreme Court held that when a plaintiff bringing a Consumer Legal Remedy Act ("CLRA") claim for injunctive relief is acting as a private attorney general, "arbitration is not a suitable forum." In *Cruz v. PacifiCare Health Systems, Inc.*, 30 Cal. 4th 303, 320 (2003), the California Supreme Court extended that reasoning to claims under the California Unfair Competition Law ("UCL") and other injunctive relief claims, so long as the plaintiff is acting on behalf of the general public rather than seeking to vindicate a more private right.

Defendant now argues that "continued reliance on the *Broughton* and *Cruz* line of cases is misplaced in light of *Concepcion*." (Motion at 23:27-28.) In *Arrellano v. T-Mobile USA, Inc.*, No. C 10–05663 WHA, 2011 WL 1842712, at *2 (N.D. Cal. May 16, 2011), the court held that, at least in federal court, *Concepcion* overruled *Cruz* and *Broughton*. *See also Zarandi v. Alliance Data Sys. Corp.*, No. CV 10–8309 DSF (JCGx), 2001 WL 1827228, at *2 (C.D. Cal. May 9, 2011) (rejecting plaintiff's request to bifurcate injunctive relief claims). In *Concepcion*, the Supreme Court stated that "[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." 131 S.Ct. at 1747. Neither *Arrellano* nor *Zarandi* discuss whether this overrules *Cruz* and *Broughton*, before deciding that it clearly does. The Court has also reviewed subsequent authority submitted by the parties and the Court is not convinced that *Cruz* and *Broughton* are overruled by *Concepcion*.

Both *Cruz* and *Broughton* are more nuanced in their holdings than an "outright" prohibition of certain claims. In *Cruz*, the court held that arbitration was improper for injunctive

1  claims brought on behalf of the general public but declined to rule on all injunctive claims, such
2  as "UCL injunctive relief actions brought by injured business competitors." *Cruz*, 30 Cal. 4th at
3  315. And in *Broughton*, the court again shied away from a broad holding about *all* injunctive
4  relief claims. *Broughton*, 21 Cal. 4th at 1079 ("We need not decide the broad question framed
5  by the Court of Appeal and by plaintiffs as to whether an arbitrator may ever issue a permanent
6  injunction."). Instead, the holding in *Broughton* is that, when a plaintiff is functioning as a
7  private attorney general, the injunctive claim is not arbitrable. *Id*. at 1080. Thus, both *Cruz* and
8  *Broughton* acknowledge that certain injunctive claims may be arbitrable and instead provide
9  guidelines for determining when injunctive claims are not subject to arbitration. It is not clear
10 that *Concepcion* intended to overrule the *Cruz* and *Broughton* line of cases.

11        Further, as set forth thoroughly in *Broughton*, there are compelling reasons why
12 arbitration is not the proper forum for vindicating a broad public right. *Broughton* notes that
13 "[o]ur path . . . begins by recalling that the purpose of arbitration is to voluntarily resolve private
14 disputes in an expeditious and efficient manner." *Id*. at 1080. And the court was "cognizant of
15 the evident institutional shortcomings of private arbitration in the field of such public
16 injunctions." *Id*. at 1081. *Broughton* goes on to discuss these shortcomings. For example, a
17 superior court retains jurisdiction over a public injunction, but arbitrators are not bound by
18 earlier decisions of arbitrators in the same case, and this could cause inconsistency. *Id*. at 1081.
19 And arbitration awards don't automatically have effect on non-parties, so even a public
20 injunction could be enforceable only by the parties to the original case. *Id*. If another consumer
21 plaintiff sought to enforce an injunction, he or she would need to re-arbitrate the same claim.
22 Further, judges are accountable to the public in ways that arbitrators are not, so *Broughton* stated
23 that judges are more suitable for overseeing injunctive remedies designed for public protection.
24 *Id*.

25        Here, Plaintiffs bring their UCL and CLRA claims as private attorneys general, seeking to
26 vindicate a public right. These claims are not intended to remedy a primarily private right or
27 rights merely incidental to the public benefit. *See Cruz*, 30 Cal. 4th at 315. The holdings of
28 *Cruz* and *Broughton* are not inconsistent with *Concepcion*, and they protect important public

rights and remedies. Thus, the Court DENIES the Motion to Compel regarding the UCL and CLRA injunctive relief claims.

### 2.5 Conclusion on Motion to Compel

The Court concludes that most of Plaintiffs' arguments on the Motion to Compel are unsuccessful. However, Plaintiffs have convincingly argued that the UCL and CLRA claims should be severed and not sent to arbitration. The Court DENIES the Motion to Compel as to the UCL and CLRA injunctive relief claims, but otherwise GRANTS the Motion to Compel as to the California, Washington, Oregon, and New Jersey Plaintiffs.

## 3. PLAINTIFFS' REQUEST FOR ADDITIONAL DISCOVERY

Plaintiffs include a last-ditch request for additional discovery to create a "fully developed factual record." (Opposition at 36:17-18.) Plaintiffs renew their request for discovery as previously set forth in an ex parte application filed on June 7, 2011. (Dkt. # 216.) The Court denied the ex parte because, among other reasons, the requested documents and numerous interrogatories were not narrowly tailored. (Dkt. # 220.) Plaintiffs have not tailored their request for more discovery here. Although the Court reserved the right to order discovery after reviewing the briefing on this Motion, the Court does not find that such discovery would be necessary for resolving the issues presented. The issues here are largely questions of law rather than fact, and more discovery is likely to add costs without providing benefits.

## 4. MOTION TO DISMISS OR STAY PENDING ARBITRATION

Under 9 U.S.C. § 3, if a case is referred to arbitration, the Court "shall on application of one of the parties *stay the trial* of the action until such arbitration has been had in accordance with the terms of the agreement." (Emphasis added.) Defendant argues that the Court is also

17

empowered to dismiss a case after compelling arbitration. *See Sparling v. Hoffman Construction Co.*, 864 F.2d 635, 638 (9th Cir. 1988). In addition, Defendant asks the Court to stay the UCL and CLRA claims in the event the Court finds those claims to be non-arbitrable. (Motion at 24:17-21.) Plaintiffs do not address the question of a stay or a dismissal if the Court were to grant the motion to compel, nor do they discuss whether the litigation of the UCL and CLRA claims should be stayed.

      The Court finds that the issue of a stay has not been adequately briefed by the parties at this time, particularly regarding the injunctive relief claims. The Court ORDERS further briefing on the Motion to Dismiss or Stay in light of this Order. Defendant may file a supplemental brief on the issue of dismissing or staying the case, due by September 19, 2011. Plaintiffs may file an opposition by October 3, 2011. Defendants may file a reply by October 11, 2011. The Court sets a hearing on the Motion to Dismiss or Stay for October 24, 2011, at 10:00 a.m.

**DISPOSITION**

The Court ISSUES an indicative ruling under Rule 62.1 regarding the Motion to Reconsider, finding that the motion raises substantial issues.  The Court will reconsider the issues raised if the Ninth Circuit elects to remand after receiving notice of this Order.  The Court DENIES the Motion to Compel as to the UCL and CLRA injunctive relief claims, but otherwise GRANTS the Motion to Compel as to Plaintiffs from California, Washington, Oregon, and New Jersey.  The Court DENIES Plaintiffs' request for more discovery.  The Court ORDERS further briefing on the Motion to Dismiss Or Stay as set forth in Section 4.  The Court sets a hearing on the Motion to Dismiss or Stay for October 24, 2011, at 10:00 a.m.

IT IS SO ORDERED.

DATED: September 6, 2011

_____
Andrew J. Guilford
United States District Judge